[Nos. B174825, B175973. Second Dist., Div. Eight. May 6, 2005.]

RAVEN BLAKEMORE et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
AVON PRODUCTS, INC., Real Party in Interest.

[No. B176780. Second Dist., Div. Eight. May 6, 2005.]

RAVEN BLAKEMORE et al., Plaintiffs and Appellants, v.
AVON PRODUCTS, INC., Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II and III.

## COUNSEL

Huron Maki & Johnson, Jeffrey Huron, Ann S. Lee and Brenda Barton-LeMay for Petitioners and for Plaintiffs and Appellants.

No appearance for Respondent Superior Court

Paul, Hastings, Janofsky & Walker, Alan K. Steinbrecher, Dennis S. Ellis and Joshua G. Hamilton for Real Party in Interest and for Defendant and Respondent.

## OPINION

**BOLAND, J.—**

### SUMMARY

This is a class action lawsuit filed against Avon Products, Inc. by women who sell or sold beauty products for Avon as independent sales representatives. The sales representatives allege that Avon shipped them products they did not order and, when they returned and paid for the unordered products, Avon refused to credit their accounts and engaged in various other practices to dissuade them from returning unordered products. They allege causes of action for fraudulent concealment, breach of contract and unfair business practices, among others. Avon successfully demurred to several causes of

action and successfully moved to strike the class action allegations of the complaint, resulting in two writ petitions and an appeal by the sales representatives.

We conclude that both the writ petitions and the appeal have merit. In the unpublished portion of this opinion, we find:

(1) The plaintiffs stated facts sufficient to support an action for fraudulent concealment;

(2) The plaintiffs stated facts sufficient to support an action for breach of contract; and

(3) The trial court erred in eliminating plaintiffs Blakemore, Smith and Lane from the case on the ground their second amended complaint was inconsistent with averments in earlier versions of the complaint.

In the published portion, we conclude:

(4) The third amended complaint properly stated a claim for violation of the unfair and fraudulent prongs, but not the unlawful prong, of the unfair competition law, Business and Professions Code section 17200;

(5) The trial court erred in striking the plaintiffs' class action allegations; and

(6) No basis exists for plaintiffs' request to remand the case to a different trial judge.

## FACTUAL AND PROCEDURAL BACKGROUND

Raven Blakemore and several other women (collectively, Blakemore plaintiffs) who sell or sold beauty products as independent sales representatives for Avon Products, Inc. brought a class action lawsuit against Avon. The crux of their complaint is that Avon engages in a practice they characterize as "channel stuffing," in which Avon forces or "stuffs" products onto its sales representatives—Avon's "channels of distribution"—by deliberately shipping them products they did not order, or products far in excess of the quantities they ordered. When the sales representatives return the unordered products for credit, Avon refuses to grant the credit, in violation of its own return policy. Blakemore's complaint alleges Avon falsely denies receiving the returned products; coerces the representatives to accept and pay for unordered products rather than return them for credit; unfairly requires the representatives to pay the return shipping costs; revokes its policy of "instant credit" and requires the representatives to pay for unordered products until Avon

completes its lengthy return process; refuses to ship any further products until the representatives pay for their entire orders in advance, which most cannot afford to do; threatens to terminate the representatives' businesses if they persist in returning unordered products for credit; and, when representatives quit or are terminated, submits claims to collection agencies based on unordered products that were returned to Avon in order to harass the representatives into paying monies they do not owe. Blakemore's complaint describes a nationwide class, and a California subclass, consisting of all Avon sales representatives "who, since March 24, 1999, received products from Avon they did not order, thereafter returned the unordered products to Avon, and did not receive credit for those returned products . . . ."

Blakemore alleges several causes of action in several iterations of the complaint, and Avon filed demurrers and motions to strike in each case. We first describe the pleadings and the trial court's rulings which precipitated the writ petitions and appeal now under review.

### 1. *Blakemore's first amended complaint.*

In the first amended complaint—the ruling on which is not at issue—Blakemore was the only named plaintiff. She specifically alleged that Avon shipped her products she never ordered and, when she tried to return them under Avon's policies and her contract, Avon either failed to acknowledge the return or failed to credit her for the returns, and thereafter demanded payment for products she never ordered. When Blakemore refused to pay money to Avon for products she did not order, her alleged past due account was sent to collections by Avon, and Avon continued to claim that Blakemore owed Avon money for the unordered and returned products. Blakemore asserted causes of action for violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), breach of contract, unjust enrichment, and money had and received.

The trial court sustained Avon's demurrer to the first amended complaint on the ground Blakemore had failed to plead any cognizable pecuniary damages, and gave Blakemore 30 days' leave to amend to bring in one or more plaintiffs who suffered actual pecuniary damages.

### 2. *Blakemore's second amended complaint.*

The second amended complaint added three named plaintiffs—Robin Smith, Lupe Lane and Elda Garcia—and added a cause of action for

fraudulent concealment.[1] Blakemore added allegations that, in August 2002, she returned unordered products to Avon and paid the return shipping costs, and also paid for the returned products in the sum of $83.79, with the expectation that she would receive credit for that amount in future account statements she received. Avon failed to give any credit to Blakemore for those products. Thereafter, Blakemore received other unordered products for which she was charged, and promptly returned them and paid the shipping costs. Avon denied receiving the returned products and refused to grant any credit. When Blakemore refused to pay any further amounts for unordered products that she returned to Avon, Avon sent a false claim to a collection agency, which threatened to sue her and take other adverse actions to collect monies she does not owe. Smith, Lane and Garcia likewise allege the details concerning their return of unordered products, payment of shipping costs, and payment for unordered products "with the expectation that [they] would receive credit for that amount in [their] future account statements pursuant to Avon's Return Policy."[2]

Incorporating the allegations described, the Blakemore plaintiffs assert causes of action for fraudulent concealment, breach of contract, unjust enrichment, and violation of the unfair competition law (UCL). The second amended complaint includes the following allegations:

— Fraudulent concealment. Avon's conduct constituted the fraudulent concealment of material facts regarding its ordering, shipping, and return policies and practices. Avon represented to its sales representatives that (a) the company would ship and charge only for products that were ordered by the representatives; (b) representatives could return products they did not order for full credit; (c) the company would immediately grant credit to the representatives' accounts for unordered products that they return to Avon; and (d) the representatives would not receive certain "preferred preview" products if they contacted Avon to decline receipt.[3] Avon failed to disclose, however, (a) that it deliberately ships and charges for unordered products; (b) that the

---

[1] The cause of action for money had and received was deleted from the second amended complaint.

[2] According to the complaint, the alleged "channel stuffing" practices benefit Avon because the company records unordered product shipments as final sales which boost the company's sales revenues, and the compensation of Avon's top executives is directly tied to the company's sales revenues and financial performance.

[3] The complaint alleges Avon provides a detailed purchase order with the assurance that it will ship and charge only for those products specifically ordered in the purchase order. The practice of shipping unordered products is known as "forced delivery." Other methods of "channel stuffing" include "preferred preview," which occurs when Avon introduces a new product and automatically ships the new product to all of its sales representatives. Prior to the shipment, Avon represents in writing that the sales representatives may decline to receive the product by notifying Avon, but Avon engages in a company-wide practice of deliberately shipping the products to all representatives, even to those who decline receipt. The complaint

sales representatives must pay the return shipping costs; (c) that Avon does not honor its return policy and refuses to grant credit for unordered products that are returned; (d) that Avon deliberately ships "preferred preview" products whether or not the sales representative contacts Avon to decline receipt; (e) that Avon denies credit for unordered products by falsely claiming the returns were not received; (f) Avon seeks payment for unordered products that are returned by submitting false claims to collection agencies; (g) that Avon initially grants credit and later reverses the credit in future account statements; and so on. These undisclosed policies were material facts which Avon had a duty to disclose to the representatives, because (1) they materially qualified the representations Avon made, or rendered those representations "likely to mislead" the representatives, and (2) because the facts were known or accessible only to Avon. Avon concealed these material facts with the intent to defraud the representatives into enlisting or remaining active sales representatives, accepting unordered products, returning them, and paying Avon for unordered products they returned. The Blakemore plaintiffs were unaware of the material facts concealed, "and would not have enlisted or remained active Sales Representatives, ordered products from Avon, accepted unordered products from Avon, returned unordered products to Avon, or paid Avon for unordered products."

— Breach of contract. Plaintiffs entered into substantially identical written contracts with Avon, "which Avon from time to time has amended and modified both orally and in writing, including but not limited to in its training guides, sales brochures, marketing pamphlets, and promotional materials . . . ." Implied in the contract "is a covenant of good faith and fair dealing that Avon will do nothing to deprive Plaintiffs of the benefits of" the contract. Material benefits plaintiffs were to receive under the contracts were that: Avon would ship only the products plaintiffs ordered; would charge for only those products; would grant credit for unordered products plaintiffs returned; would not refuse to grant credit for unordered products plaintiffs returned by denying receipt when in fact it received those products; would not penalize plaintiffs for returning unordered products by requiring them to pay the return shipping costs, or revoking their "instant credit," requiring advance payment for future orders, or threatening to terminate plaintiffs; and would not falsely claim plaintiffs owed monies for unordered products that they returned and

---

also alleges Avon has a "return policy" under which it represents, both in writing and orally, that sales representatives may return unordered products to Avon for full credit. The Blakemore plaintiffs allege that representation is false, "in that Avon has a policy and practice of denying credit to Sales Representatives who return unordered products by falsely claiming Avon never received the returned products when in fact the company did receive such products." In some instances, Avon "deceptively 'grants' immediate credit to a Sales Representative in one month's account statement and then later reverses such credit in subsequent account statements." If the representative discovers the credit reversal and seeks adjustment, Avon falsely claims it never received the returned products or the initial credit was in error.

submit those false claims to collection agencies. Avon breached the contract by shipping unordered products, charging for them, refusing to grant credit, falsely denying receipt of returned products, requiring payment of return shipping costs, revoking credit, and so on.

— Violation of the UCL. Avon's conduct was "fraudulent, unfair, and/or unlawful" in violation of the UCL. Specifically:

— The practices were "fraudulent in that they are likely to deceive members of the general public about Avon's ordering, shipping, and return policies and practices" by falsely representing that Avon would ship and charge only for those products that were ordered, without disclosing it deliberately ships unordered products, "which deceives new and existing Sales Representatives into selling and ordering Avon products . . . ."[4]

— Avon's practices were "unfair in that they are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers . . . ." Specifically, the deliberate shipment of unordered products "unfairly requires the Sales Representatives to pay the shipping costs of returning the unordered products even though they were not at fault for receiving such products and thus should not bear the cost of doing so . . . ." Avon unfairly revokes the "instant credit" of, and unfairly requires prepayment from, representatives who return unordered products, under the guise that they are making excessive returns. Since many sales representatives cannot afford to sell Avon products without instant credit, the unfair revocation of their credit "economically coerces Sales Representatives into accepting and paying for unordered products so that they can continue servicing their clients and operating their businesses . . . ." Similarly, Avon unfairly threatens to terminate sales representatives who persist in returning unordered products for credit, and unfairly submits false claims that representatives owe Avon money to collection agencies in order to harass them into paying monies they do not owe.

— Avon's practice of shipping unordered products to sales representatives is an unlawful practice under the UCL because it violates a federal statute prohibiting the mailing of unordered merchandise. (39 U.S.C. § 3009.)

Avon again demurred and moved to strike the second amended complaint, arguing that none of the four causes of action were supported by applicable

---

[4] Similarly, Avon falsely represents that sales representatives may return products for full credit, which deceives representatives into accepting unordered products from Avon; falsely represents that Avon will grant credit for unordered products, which deceives representatives into paying for unordered products that they return "with the expectation that they will receive due credit at a later time in future account statements;" and submits false claims to collection agencies, "which deceives Sales Representatives, who are harassed and threatened by the collection agencies, into paying monies they do not owe."

law and, in particular, that Blakemore's allegations of pecuniary harm were "directly contradicted by the prior complaints filed by her . . . ." Avon argued the same was true of Smith and Lane because, while the first amended complaint was pending, Blakemore sought permission to file a proposed second amended complaint, in which Smith and Lane did not allege they paid for products they returned, but only alleged, like Blakemore in the first amended complaint, that Avon failed to credit them for returned products and continued to claim they owed Avon money for returned products. The fourth plaintiff, Garcia, was not named in the proposed second amended complaint. As to Garcia, Avon argued her allegations of harm were "spurious" and "too absurd to be believed."

On March 16, 2004, the trial court:

— Sustained Avon's demurrer to the cause of action for fraudulent concealment without leave to amend, "because all plaintiffs knew that they had not ordered the product and were not deceived."

— Sustained Avon's demurrer to the breach of contract claim without leave to amend, "because there is still no allegation of any contract term that was breached."

— Overruled Avon's demurrer to the unjust enrichment claim.

— Sustained, with leave to amend, the UCL claim, observing that the "complaint fails to plead shipments were made by U.S. Mail, therefore violat[ing] 39 United States Code Section 3009." At the hearing, counsel for Avon asked the court for clarification of its tentative ruling granting leave to amend to allege use of the United States mail, stating that he (counsel) "read that to mean we're working with the unlawful prong of [Business and Professions Code section] 17200 and the unfair and fraudulent prongs are out of the case." The court responded, "That was my thinking, yes."

— Sustained, without leave to amend, Avon's demurrer as to Blakemore, Smith and Lane. The court concluded they were "not proper class representatives because they had alleged that they did not pay, and now allege that they did pay."

— Overruled the demurrer as to Garcia.[5]

Six weeks later, Blakemore filed a petition for writ of mandate, challenging the trial court's rulings on the fraudulent concealment and contract claims

---

[5] The court ruled that Avon's motion to strike was moot in light of its other rulings.

and on the elimination of Blakemore, Smith and Lane as class representatives. On June 9, 2004, this court deferred ruling on the petition, in anticipation of a further petition for writ relief with respect to subsequent rulings made by the trial court in its order dated June 1, 2004.

### 3. *Blakemore's third amended complaint.*

Meanwhile, on April 5, 2004, the remaining plaintiff, Elda Garcia, filed a third amended class action complaint, alleging causes of action for unjust enrichment and violation of the UCL. Avon again filed both a demurrer and a motion to strike. On June 1, 2004, the trial court:

— Again overruled Avon's demurrer to the unjust enrichment claim, giving Avon 15 days to answer.

— Sustained Avon's demurrer to the UCL claim, without leave to amend. This time, the court observed that the statute prohibiting the mailing of unordered merchandise (39 U.S.C. § 3009) "allow[ed] consumers to keep the product for free. Here we are dealing with Avon representatives, not consumers, and there is not a contention that they should have been able to keep the product without payment."

— Granted Avon's motion to strike the class allegations. The court observed that "Garcia, who paid $79 for product that she did not order and did return, is not typical. Common questions do not exist. The reasons stated as to why a representative paid for an unordered product have been varied and are inconsistent with the alleged return policy which allowed for instant credit."

In response to the trial court's order, Garcia took two actions. First, on June 4, 2004, she sought reconsideration of the trial court's ruling striking the class allegations, based on the then-recently issued opinion in *Prince v. CLS Transportation, Inc.* (2004) 118 Cal.App.4th 1320 [13 Cal.Rptr.3d 725] (*Prince*). *Prince* observed that "it is only in mass tort actions (or other actions equally unsuited to class action treatment) that class suitability can and should be determined at the pleading stage," and that "[i]n other cases, . . . class suitability should not be determined by demurrer." (*Id.* at p. 1325, fn. omitted.) Second, on June 17, 2004, Garcia filed a writ petition challenging the court's ruling on her UCL claims, arguing that her complaint properly stated claims under all three prongs of the UCL—that is, that Avon's practices were unlawful, unfair and fraudulent.

On June 24, 2004, this court ordered the consolidation of the two writ petitions, and issued an alternative writ of mandate, suggesting that the trial

court vacate both its orders and issue a new ruling (a) overruling the demurrers as to the fraudulent concealment claim, the UCL claim, and the inclusion of Blakemore, Smith and Lane as plaintiffs, and (b) sustaining the demurrer to the contract claim with further leave to amend. The trial court did not vacate its orders, and on July 20, 2004, it denied Garcia's motion for reconsideration. The trial court observed that *Prince, supra,* 118 Cal.App.4th 1320, did not make new law, but rather "acknowledged that the facts of each case need to be considered as to a community of interest, which is what this Court has done."

Garcia filed a timely appeal from the portion of the trial court's June 1, 2004 order striking Garcia's class action allegations and from the July 20, 2004 order denying her motion for reconsideration of that order. We heard oral argument on the appeal and the writ petitions at the same time and, on our own motion, consolidate the matters for decision.[6]

## DISCUSSION

We discuss the several issues raised in the writ petitions and the appeal in the general order in which they arose. For purposes of review, we necessarily accept as true the facts alleged in the complaints.

I.–III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV. *The trial court erred in sustaining Avon's demurrer to Garcia's cause of action for violation of the UCL.*

█ In the third amended complaint, Garcia alleges that Avon's practices—shipping and charging for unordered products, denying credit to sales representatives who return unordered products, and so on—violate the UCL, Business and Professions Code section 17200 et seq. Conduct violating the UCL includes "any unlawful, unfair or fraudulent business act or practice . . . ." By proscribing unlawful business practices, the UCL borrows violations of other laws and treats them as independently actionable. In addition, practices may be deemed unfair or deceptive even if not proscribed by some other law. Thus, there are three varieties of unfair competition: practices which are unlawful, or unfair, or fraudulent. (*Cel-Tech*

---

[6] In an order dated August 12, 2004, this court denied Garcia's request to consolidate the appeal with the writ proceedings for purposes of briefing, oral argument and decision but, mindful that the issues were closely related, advised the parties that oral argument would be heard at the same time.

*See footnote, *ante,* page 36.

*Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527].) Garcia sufficiently alleges a violation of the UCL under the unfair and fraudulent prongs of the statute, but not under the unlawful prong.

### A. *Garcia alleges facts constituting an unfair or fraudulent business practice under the UCL.*

Having determined in an unpublished portion of this opinion that the Blakemore plaintiffs alleged a sufficient claim for fraudulent concealment, we necessarily conclude that the practices alleged are sufficient to constitute an unfair or fraudulent business practice under the UCL.

The term "fraudulent" as used in Business and Professions Code section 17200 requires only a showing that members of the public are likely to be deceived. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211 [197 Cal.Rptr. 783, 673 P.2d 660].) Unlike common law fraud, a Business and Professions Code section 17200 violation can be shown even without allegations of actual deception, reasonable reliance and damage. (*Committee on Children's Television, Inc.*, at p. 211.) In this case, Garcia alleges that Avon represented it would ship and charge only for ordered products, and representatives could return unordered products for full credit, while in actuality Avon's practice was to ship unordered products and refuse to grant credit for returned products, thus deceiving its sales representatives into accepting and paying for unordered products with the expectation their accounts would be credited in the future. These allegations are sufficient to state a section 17200 claim based upon deception. (See, e.g., *Pastoria v. Nationwide Ins.* (2003) 112 Cal.App.4th 1490, 1499 [6 Cal.Rptr.3d 148] [allegations that insurer did not notify purchasers of insurance policies of impending material changes in policy benefits and premiums until after they purchased the insurance were sufficient to state a section 17200 claim based on deception].) Because the allegations are sufficient to state a UCL claim based upon deception, the same allegations necessarily suffice to state a claim under the unfairness prong of the UCL. A practice which is deceptive is necessarily unfair.[13]

### B. *Garcia cannot state a UCL claim predicated on conduct that is unlawful under 39 United States Code section 3009.*

The third amended complaint also alleges that Avon's practices were unlawful business practices under the UCL because the shipment to its

---

[13] In its return to Garcia's writ petition, Avon contends that the "universal test to determine what conduct will constitute a violation of the unfair or fraudulent prongs of [Business and Professions Code] Section 17200" is whether the public is likely to be deceived.

representatives of unordered products violated federal law prohibiting the mailing of unsolicited merchandise (39 U.S.C. § 3009), and section 5 of the Federal Trade Commission (FTC) Act. (15 U.S.C. § 45(a)(1).) Section 3009, a part of the Postal Reorganization Act, provides, with irrelevant exceptions, that: "the mailing of unordered merchandise or of communications prohibited by subsection (c) of this section [prohibiting bills or dunning communications relating to such merchandise] constitutes an unfair method of competition and an unfair trade practice in violation of section 45(a)(1) of title 15."[14] (39 U.S.C. § 3009, subd. (a).) "Unordered merchandise" is defined as "merchandise mailed without the prior expressed request or consent of the recipient." (39 U.S.C. § 3009, subd. (d).) The statute also provides that a recipient of such merchandise may treat it as a gift. (*Id.*, subd. (b).)

■ We conclude that title 15 United States Code section 3009 does not prohibit the mailing of unordered merchandise as between parties to an ongoing contractual relationship involving the sale of the same merchandise. The language of the statute does not expressly limit its application to consumers, instead using the word "recipient." However, the legislative history of the statute as reported in case precedents, similar state statutes, and the FTC's own orders enforcing section 3009 show that it is addressed to the mailing of unordered merchandise by the seller to the consumer of that merchandise, not to parties who have contracted with each other to promote the sale of the same merchandise to third persons.

First, the legislative history of title 15 United States Code section 3009 was reviewed by the Ninth Circuit in *Kipperman v. Academy Life Ins. Co.* (9th Cir. 1977) 554 F.2d 377 (*Kipperman*): "Section 3009's main purpose is to combat an old and pernicious practice of mailing unsolicited merchandise by enabling the Federal Trade Commission to attack the practice as a *per se* violation of unfair trade laws and by allowing the consumer to keep the item received. . . . [W]hat is now section 3009 was introduced as an amendment to the Senate version of the Act on the same evening the Act was passed. The purpose of the amendment was to 'control the unconscionable practice of persons who ship unordered merchandise to consumers and then trick or bully them into paying for it.' 116 Cong.Rec. at 22314 (June 30, 1970) (remarks of Sen. Magnuson). The Senate amendment was accepted by the conference committee without comment. 1970 U.S. Code Cong. & Admin. News, p. 3721." (*Kipperman, supra*, 554 F.2d at p. 379.) Thus, the legislative intention was to prevent the practice of shipping unordered merchandise "to consumers" and then tricking them into paying for it. (*Ibid.*) Other cases have made similar references. (E.g., *Crosley v. Lens Express, Inc.* (W.D.Tex., Feb.

---

[14] Section 45(a)(1) of title 15 of the United States Code—the FTC Act—provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."

9, 2001, Civ. A. No. SA-00-CA-385-EP) 2001 U.S.Dist. Lexis 25222, *4–5, 15 (*Crosley*) ["[i]t is clear that section 3009, like the Federal Unfair Trade Practices Act that it references, is designed to protect consumers from the unfair trade practices"; "the statute's reason for being is not the postal service; rather, it is the need to protect consumers from dishonest business persons"]; *Kashelkar v. Rubin & Rothman* (S.D.N.Y. 2000) 97 F.Supp.2d 383, 395 [section 3009 "concerns the mailing of unsolicited merchandise to customers"].)

Second, as *Kipperman* points out, "the practice with which [title 15 United States Code] section 3009 is concerned traditionally has been governed by state law." (*Kipperman, supra*, 554 F.2d at p. 380.) The State of California has such a statute, governing the unsolicited sending of goods or services (Civ. Code, § 1584.5), and it is similarly directed at sellers marketing products or services to consumers. California's statute, like federal law, applies to goods "not actually ordered or requested by the recipient" (Civ. Code, § 1584.5), and the statute repeatedly refers to "the seller" and "the consumer."[15] While the existence of a state statute on the same subject does not control the interpretation of a federal law, it serves to demonstrate the similarity of purpose in the statutes—the protection of consumers from sellers of unsolicited goods or services.

Third, the FTC, the agency responsible for enforcing title 15 United States Code section 3009, indicated in a consent order that a "recipient" does not include a person or business establishment which does not purchase the merchandise for consumption. (*In re Commercial Lighting Products, Inc.* (1980) 95 F.T.C. 750, 1980 FTC Lexis 83, *11.) In *Commercial Lighting Products*, the FTC initiated an investigation of alleged violations of section 3009 by a company in the business of selling light bulbs, and the parties entered into a consent order. The order requires the company to cease and desist from certain practices, including "[s]hipping Products or causing Products to be shipped, without the expressed request or consent of a Person." (1980 FTC Lexis at *12.) The order defines "Person" as a recipient of products from the company, with the express proviso that "Person shall not mean a natural person, business establishment or institution which does not purchase said Products for consumption (i.e., independent jobbers or wholesalers)." (*Id.* at *11.)

---

[15] For example, the statute defines the unsolicited sending of merchandise through the mails to include "any merchandise . . . selected by the company and offered to the consumer . . ." and requires merchandise or services "selected by the seller and offered for sale on a periodic basis" to be "affirmatively ordered by a statement or card signed by the consumer . . ." (Civ. Code, § 1584.5.)

■ In sum, title 15 United States Code section 3009 forbids the mailing of unordered merchandise by sellers to consumers, and was not intended to apply to independent jobbers or wholesalers or, as in this case, where a contractual relationship exists between the parties relating to the sale of the merchandise.[16] Consequently, Garcia cannot state a violation of the UCL under its unlawful prong predicated on a violation of section 3009. This does not mean that the practice alleged may not be an unfair or deceptive practice under federal law, just as it may be unfair or deceptive under the UCL (pt. IV.A., *ante*). We hold only that the conduct alleged in the complaint is not an unlawful practice under the UCL by virtue of section 3009.[17]

V. *The trial court erred in striking the class allegations at the pleading stage of the case.*

■ "[T]wo requirements must be met to sustain a class action. The first is existence of an ascertainable class, and the second is a well-defined community of interest in the questions of law and fact involved." (*Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 809 [94 Cal.Rptr. 796, 484 P.2d 964]

---

[16] Garcia asks us to take judicial notice of a notice and request for comment issued by the FTC and a statement of the FTC on office supply fraud prepared for the United States Senate Committee on Small Business. We grant the request; however, the content of the documents does not aid Garcia's argument. The documents reflect, as Garcia suggests, that the FTC interprets title 15 United States Code section 3009 as protecting small businesses from the unlawful practice of mailing unordered merchandise. It is clear, however, that small businesses are protected because they are the consumers of the unordered merchandise. The FTC notice observes that "small businesses are frequently consumers themselves . . ." and refers to "office supply scams that ship and bill for unordered merchandise . . . ." (FTC, Notice and Request for Comment Regarding Compliance Assistance and Civil Penalty Leniency Policies for Small Entities (Apr. 8, 1997) fn. 6; see also Prepared Statement of the FTC on Office Supply Fraud Before the Committee on Small Business, United States Senate (Mar. 28, 2000) [discussing office supply scams involving products that are used in the course of business and purchased on a regular basis].) The small businesses are plainly the consumers of the products in question.

[17] Avon argues that title 15 United States Code section 3009 cannot be used as the predicate violation for an unlawful business practice because no private right of action exists to enforce section 3009. Avon's contention is without merit. First, the cases are in conflict over whether a private right of action exists to enforce section 3009. (See *Kipperman, supra,* 554 F.2d at p. 380 [a limited private right of action exists under section 3009 to secure restitutionary, but not injunctive, relief]; *Crosley, supra,* 2001 U.S.Dist. Lexis 25222, *9 [section 3009 creates a limited private right of action encompassing claims for damages]; contra *Randolph v. Oxmoor House, Inc.* (W.D.Tex., Sept. 30, 2002, Civ. A. No. SA-01-CA-0699-FB) 2002 U.S.Dist. Lexis 26289 [no private right of action under section 3009].) Second, and more importantly, a private right of action under the predicate statute is not necessary in order to state a UCL violation based on that statute. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 565 [71 Cal.Rptr.2d 731, 950 P.2d 1086] [rejecting contention that a plaintiff cannot sue under the UCL when the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action; UCL claim is barred when it is based on conduct which is absolutely privileged or immunized by another statute].)

(*Vasquez*).) The second requirement—a community of interest—embodies three factors: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

A demurrer to class allegations may be sustained without leave to amend only "where it is clear that there is no reasonable possibility that the plaintiffs could establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact." (*Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1234 [271 Cal.Rptr. 72].) "Whenever there is a 'reasonable possibility' plaintiffs can plead a prima facie community of interest among class members, 'the preferred course is to defer decision on the propriety of the class action until an evidentiary hearing has been held on the appropriateness of class litigation.' " (*Brown v. Regents of University of California* (1984) 151 Cal.App.3d 982, 988 [198 Cal.Rptr. 916], quoting *Rose v. Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 154 [166 Cal.Rptr. 16].)

In this case, the trial court struck the class allegations in Garcia's third amended complaint, giving the following explanation:

"Plaintiff Garcia, who paid $79 for product that she did not order and did return, is not typical. Common questions do not exist.

The reasons stated as to why a representative paid for an unordered product have been varied and are inconsistent with the alleged return policy which allowed for instant credit."

We conclude the trial court erred.

## 1. *The standard of review.*

■ Avon contends we must apply an abuse of discretion standard in evaluating the trial court's order striking the class allegations, because the ruling was tantamount to an order denying class certification, which is reviewed under a standard affording "great discretion" to the trial court. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*).) Avon is mistaken. A motion to strike, like a demurrer, challenges the legal sufficiency of the complaint's allegations, which are assumed to be true. (See *Clauson v. Superior Court* (1998) 67 Cal.App.4th 1253, 1255 [79 Cal.Rptr.2d 747] [an order striking punitive damages allegations is reviewed de novo].) Unlike a motion to strike, a motion for class certification occurs at a later stage of the case, "after notice and hearing"

(*La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 876 [97 Cal.Rptr. 849, 489 P.2d 1113] (*La Sala*)), a procedure which allows the judge "as much insight into the case as possible in making his determination." (*Beckstead v. Superior Court* (1971) 21 Cal.App.3d 780, 783 [98 Cal.Rptr. 779] (*Beckstead*).) As *Linder* observed: "[I]n the absence of other error, a trial court ruling [denying class certification] supported by substantial evidence generally will not be disturbed" unless improper criteria were used or erroneous legal assumptions were made. (*Linder, supra,* 23 Cal.4th at p. 435.) In this case, by contrast, there is no "substantial evidence" to review. Avon's motion to strike the class allegations "raises only the narrow issue whether this suit as a matter of law lacks sufficient community of interest to sustain a class action." (*La Sala, supra,* 5 Cal.3d at p. 876.) ██ Matters of law are questions we review de novo.

### 2. *Typicality.*

First, we cannot discern any basis for the conclusion that Garcia "is not typical." We can only speculate the reason for this conclusion is the one asserted by Avon: that the description of the class—sales representatives who "received products from Avon they did not order, thereafter returned the unordered products to Avon, and did not receive credit for those returned products"—does not explicitly state that the class members paid for the returned products, while Garcia alleges she paid for the returned products. As Avon states it, "While Garcia claimed that she was entitled to a ***refund*** of money she allegedly paid . . . , the purported class members only sought ***credits*** for products they returned but never paid for."

Avon's argument draws a distinction without a difference. A class member who continues to sell for Avon would likely be satisfied by a credit to her account. One who no longer sells for Avon would require a refund. Moreover, even if there is a difference between seeking credit and seeking a refund, the point would be easily remedied by a simple modification of the class description. The significant point is that, in response to the trial court's initial ruling that plaintiffs had failed to plead any cognizable pecuniary damages, the Blakemore plaintiffs amended the complaint to do just that, alleging throughout the complaint that they paid for returned products. In short, it is impossible to read the complaint without understanding that the class alleged consists of Avon representatives who received unordered products, returned them, paid for them, and now want a credit or a refund. Garcia and the other Blakemore plaintiffs who so allege are clearly typical of the class.

### 3. *Community of interest.*

██ The broader question of a "community of interest in the questions of law and fact involved" (*Vasquez, supra,* 4 Cal.3d at p. 809) ultimately

requires a determination of "whether, given an ascertainable class, the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." (*Collins v. Rocha* (1972) 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225].) In this case, the third amended complaint alleges that common questions included whether Avon:

— Was unjustly enriched by refusing to grant credit after sales representatives paid for products they did not order and returned to Avon;

— Shipped and charged for products it knew or should have known were not ordered;

— Refused to grant credit for unordered products that were returned;

— Penalized representatives returning unordered products for credit by:

A. Requiring them to pay return shipping costs;

B. Revoking their instant credit;

C. Requiring prepayment of future or pending orders;

D. Threatening to terminate their businesses; and

E. Submitting false claims to collection agencies.

The trial court found that common questions "do not exist." Again, we do not understand why the above listed issues should not be considered questions common to all members of the putative class. If each class member brought a separate suit, each one would have to prove Avon applied the very same practices to her: it shipped unordered products, refused to grant credit when they were returned, required payment of return shipping costs, and utilized one or more of the alleged means of penalizing her for returning unordered products for credit. We are unable to discern why those issues cannot be "jointly tried" (*Collins v. Rocha, supra,* 7 Cal.3d at p. 238) with a view to establishing whether Avon engaged in the practices alleged.

The trial court apparently reasoned that the plaintiffs had "varied" reasons for paying for unordered products, and that those reasons were "inconsistent with the alleged return policy which allowed for instant credit." We fail to understand the relevance of the court's rationale, which appears to question why the plaintiffs would pay for unordered and returned products when Avon

allowed instant credit. The point, however, is that Avon's announced policies were allegedly not its actual policies. Moreover, the relevance of the plaintiffs' reasons, "varied" or not, for paying for unordered products is not apparent. If in fact they paid for unordered products which they returned—whether because they believed their accounts would be credited in due course, because they did not want Avon to terminate their businesses, because their instant credit was revoked, or for any other reason—Avon's refusal to provide credits or refunds contrary to its stated policies would arguably constitute unjust enrichment and an unfair business practice.

Avon offers several reasons for concluding the trial court correctly found that common questions of law or fact do not exist. First, Avon asserts that the complaint, which alleges the common questions of law and fact described above, demonstrates "on its face" that there is "a lack of commonality." This is because Garcia—the only named plaintiff in the third amended complaint—does not allege that Avon required her to prepay for pending or future orders, that Avon threatened to terminate her business, or that Avon submitted a false claim on her account to a collection agency (items C through E *ante*). Other plaintiffs in earlier iterations of the complaint, however, did allege Avon submitted false claims to collection agencies, and those plaintiffs were erroneously eliminated from the case. Moreover, the complaint alleges Avon imposes increasingly onerous penalties to deter representatives from returning unordered products for credit, beginning with the imposition of shipping costs and continuing in severity up to referring the representatives' accounts to collection agencies. The fact that not all class members experienced the more severe penalties does not detract from the obvious community of interest in the substance of the practice alleged: shipping unordered products and refusing to grant credits or refunds when those products were paid for and returned.

■ Second, Avon insists that the third amended complaint shows that "diverse factual issues preclude this case proceeding as a class action," and that "obvious individual issues . . . predominate . . . ." Specifically, "each member must show that Avon actually shipped her a good she did not order, she paid for a particular good, returned it to Avon, and that Avon actually received it and refused to provide her a refund." This essentially argues that each class member had a separate transaction with Avon. Obviously that is so, but it is well established that the fact separate transactions are involved does not prevent a finding of the necessary community of interest: "The mere fact that separate transactions are involved does not of itself preclude a finding of the requisite community of interest so long as every member of the alleged class would not be required to litigate numerous and substantial questions to determine his individual right to recover subsequent to the rendering of any class judgment which determined in plaintiffs' favor whatever questions were

common to the class." (*Vasquez, supra*, 4 Cal.3d at p. 809.)[18] Taking plaintiffs' unfair business practices claim as an example, if the class representatives prove Avon engaged in the practices alleged, each class member need not separately establish Avon's liability for engaging in that practice. The class members need only show they are members of the class—representatives who paid for unordered products they returned—and the amount of their damages. "The law unequivocally provides that each class member may establish damages independently without threatening the integrity of the class action." (*Rose v. City of Hayward* (1981) 126 Cal.App.3d 926, 934 [179 Cal.Rptr. 287]; see also *Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1278 [242 Cal.Rptr. 339] ["the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate"].)

In *Prince, supra*, 118 Cal.App.4th 1320, the court analyzed the differences between cases in which the suitability of a class action can and should be decided at the pleading stage, and those in which that question should not be determined by demurrer. The court pointed out that it is "only in mass tort actions (or other actions equally unsuited to class action treatment) that class suitability can and should be determined at the pleading stage." (*Id.* at p. 1325.) Avon asserts this lawsuit falls in that category, but Avon is mistaken. In the "mass tort" cases and in others found not suitable for class treatment, it is apparent from the complaint that each class member must adjudicate separately numerous issues affecting the defendant's liability, as well as damages. (See, e.g., *Silva v. Block* (1996) 49 Cal.App.4th 345, 352 [56 Cal.Rptr.2d 613] [proposed class of persons wrongly and unjustifiably attacked by police dogs used by sheriff's department; question of liability to individual class members "would depend upon the particular conduct in which the suspect was engaged and the facts apparent to the handler before the police dog was employed"]; *Clausing v. San Francisco Unified School*

---

[18] Courts have found a sufficient community of interest in many cases involving separate transactions. In *Vasquez*, a group of consumers who bought merchandise under installment contracts were able to maintain a class action seeking rescission of the contracts for the sale of frozen food and freezers, alleging they were induced to execute the contracts by the fraudulent misrepresentations of the seller. The court rejected defendants' assertion that a class action was inappropriate because each plaintiff entered into a separate transaction at a different time and proof of the fact of representation, its falsity, and reliance as to the named plaintiffs would not supply proof of those elements as to the absent members of the class. (*Vasquez, supra*, 4 Cal.3d at p. 811.) The Supreme Court concluded: "The complaint alleges there is an ascertainable class and plaintiffs may be able to demonstrate a community of interest as to the elements of their claim of fraud, aside from the amount of damages suffered by each class member. They should, in any event, be afforded the opportunity to demonstrate that proof of most of the important issues as to the named plaintiffs will supply the proof as to all." (*Id.* at p. 815.)

*Dist., supra*, 221 Cal.App.3d at pp. 1233–1234 [proposed class of handicapped students who had allegedly been abused, beaten, and publicly humiliated by school district employees; each individual would have to prove "overwhelmingly numerous" separate issues, including the fact that he or she was a victim of abuse, the identity of the abuser, the capacity in which the abuser acted, and others; even if it could be determined that the district's policies and practices encouraged abuse of students, "this determination could not resolve the lawsuit, which would still require a full trial on each and every alleged incident of abuse with respect to fault, causation, damages, and affirmative defenses"].)[19]

By contrast, the pleadings in this case do not show that individual issues affecting Avon's liability will predominate. We discern little difference between this case and numerous others, such as consumer fraud and wage and hour lawsuits, that have been allowed to proceed as class actions beyond the demurrer stage. (See *Vasquez, supra*, 4 Cal.3d 800 [consumer fraud (see fn. 19, *ante*]; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 713–714 [63 Cal.Rptr. 724, 433 P.2d 732] [class of taxicab users seeking recovery of alleged overcharges by taxi company; allegations establishing a well defined community of interest in questions of law and fact affecting the class included that each class member was known to defendant and exact amount of overcharge could be ascertained from defendant's books and records and from information within defendant's knowledge]; *Prince, supra*, 118 Cal.App.4th at p. 1329 [trial court's finding that individual issues predominated in wage and hour action alleging employer paid its drivers only for the time they were on driving assignments, rather than for the full duration of their shifts, was "simply wrong"; the plaintiff alleged "institutional practices by [the employer] that affected all of the members of the potential class in the

---

[19] Other cases finding at the pleading stage that individual issues would predominate include *Newell v. State Farm General Ins. Co.* (2004) 118 Cal.App.4th 1094, 1099, 1103 [13 Cal.Rptr.3d 343] (proposed class of persons wrongfully denied policy benefits for damage caused to their homes by the Northridge earthquake; even if insurers adopted improper claims practices to adjust earthquake claims, each class member "still could recover for breach of contract and bad faith *only* by proving his or her individual claim was wrongfully denied, in whole or in part, and the insurer's action in doing so was unreasonable"; trial court made its finding after having previously heard six class certification motions, for which full class discovery was afforded, in other Northridge earthquake cases); *Brown v. Regents of University of California, supra*, 151 Cal.App.3d at pp. 986, 989–990 (proposed class of persons allegedly injured by hospital's failure to provide adequate coronary care; case presented "a veritable quagmire of tough factual questions" that could only be resolved by individual proof, as opposed to a "relatively simple consumer fraud action"); see also *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 460–461 [115 Cal.Rptr. 797, 525 P.2d 701] (class certification improper where proposed class of property owners situated in the flight pattern of San Jose airport sought recovery for diminution in market value of their property on theories of nuisance and inverse condemnation; actionable nuisance or inverse condemnation would depend on a myriad of individualized evidentiary factors, with no one factor determinative as to all parcels of property).

same manner"]; see also *City of San Jose v. Superior Court, supra*, 12 Cal.3d at p. 460, fn. omitted [commenting that in *Daar* and *Vasquez*, the issue of the defendant's liability to the class as a whole could be determined by facts common to all; "[l]iability to the class could be established by evidence defendant engaged in an illegal scheme to cheat or overcharge patrons, coupled with a showing from defendant's own books that defendant was successful in his scheme"].)

 In sum, *Daar* and *Vasquez* "represent California's judicial policy of allowing potential class action plaintiffs to have their action measured on its merits . . . . In order to effect this judicial policy, the California Supreme Court has mandated that a candidate complaint for class action consideration, if at all possible, be allowed to survive the pleading stages of litigation." (*Beckstead, supra*, 21 Cal.App.3d at p. 783.) Absent "strong factual showings" in the complaint that negate the possibility of a community of interest, determination of the propriety of a class action should be deferred "until a time when [the court] may better make the decision." (*Id.* at pp. 783–784, fn. omitted.) So it is here. We do not hold that a class action is appropriate in this case. That issue is for the trial court to determine at a later stage of the case. As in *Beckstead*, "we hold only that no argument has been made which would allow the judge to rule at the pleading stage that the suit was without the realm of probability of being properly tried as class litigation."[20] (*Beckstead, supra*, 21 Cal.App.3d at p. 784.)

VI. *Remand to a different trial judge is not appropriate.*

Finally, Garcia requests this court to remand this case to a different trial judge under section 170.1 of the Code of Civil Procedure, which provides that: "(c) At the request of a party or on its own motion an appellate court shall consider whether in the interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court." Garcia contends that the court's erroneous rulings favoring only Avon "reflect an animus to plaintiffs' pleadings that is inconsistent with judicial objectivity" and "have compromised 'the appearance of impartiality,' " citing *Rose v. Superior Court* (2000) 81 Cal.App.4th 564, 576 [96 Cal.Rptr.2d 843] (*Rose*), and *Catchpole v. Brannon* (1995) 36 Cal.App.4th 237, 247 [42 Cal.Rptr.2d 440] (*Catchpole*). We disagree.

 We reject the notion that erroneous rulings, without more, may justify the removal of a trial judge from further proceedings in a case. While

---

[20] This conclusion is particularly apt in the posture of this case, in which the causes of action for fraudulent concealment and breach of contract, which this decision restores to the case, were not a part of the court's analysis as to the propriety of the class action allegations.

we conclude the court erred in several respects, the leap from erroneous rulings to the appearance of bias is one we decline to make. This is not a case like *Rose* or *Catchpole*. In *Rose*, the court concluded that "the appearance of impartiality may have been compromised" where the trial judge disregarded an appellate order to conduct a hearing on a habeas corpus petition, denied the petition without a statement of reasons, and filed its own return to the appellate court's subsequent order to show cause, thereby assuming the appearance of an adversary rather than a neutral. (*Rose, supra*, 81 Cal.App.4th at pp. 569, 575–576.) In *Catchpole*, the record was rife with evidence of the trial court's gender bias during a sexual harassment case, drawing the appellate court "ineluctably" to the conclusion that the trial judge's conduct did not accord with recognized principles of judicial decorum and that "[t]he average person on the street might therefore justifiably doubt whether the trial in this case was impartial." (*Catchpole, supra*, 36 Cal.App.4th at p. 262.) In this case, the trial court did nothing more than make three erroneous rulings. Garcia can point to nothing in the transcript of the hearings or elsewhere reflecting comments or conduct by the trial judge that suggests any bias in favor of Avon or against the Blakemore plaintiffs.

"The Courts of Appeal have held that the power to disqualify a judge under Code of Civil Procedure section 170.1, subdivision (c), should ' "be used sparingly and only where the interests of justice require it." ' " (*Livingston v. Marie Callenders, Inc.* (1999) 72 Cal.App.4th 830, 840 [85 Cal.Rptr.2d 528].) We see no basis for concluding that this is such a case.

## DISPOSITION

The writ petition in case No. B174825 is granted. Let a peremptory writ of mandate issue directing the trial court to vacate its order of March 16, 2004, sustaining the demurrers of the real party in interest to the petitioners' causes of action for fraudulent concealment and breach of contract and sustaining the demurrers of the real party in interest as to plaintiffs Blakemore, Smith and Lane, and to enter a new and different order overruling the demurrers to the causes of action for fraudulent concealment and breach of contract and overruling the demurrer as to plaintiffs Blakemore, Smith and Lane. Costs are awarded to the petitioners.

The writ petition in case No. B175973 also is granted. Let a peremptory writ of mandate issue directing the trial court to vacate its order of June 1, 2004, sustaining the demurrers of the real party in interest to petitioner's cause of action for violation of Business and Professions Code section 17200 and to enter a new and different order overruling the demurrer to the extent consistent with this opinion. Costs are awarded to the petitioner.

The trial court's order of June 1, 2004, granting the respondent's motion to strike the class allegations of the third amended complaint (case No. B176780) is reversed, and the court is directed to enter a new and different order denying the motion. The appellant is to recover her costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied August 10, 2005. Werdegar, J., did not participate therein.