Filed 1/26/24  Weiblen v. Bowie CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CATHERINE WEIBLEN,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RONALD BOWIE,<br><br>        Defendant and Appellant. | A165577<br><br>(Solano County<br>Super. Ct. No. FFL160059) |

Ronald Bowie appeals from a domestic violence restraining order (DVRO) issued against him under the Domestic Violence Protection Act (DVPA, Fam. Code, § 6200 et seq.) after an evidentiary hearing.  Because he fails to show error by the trial court, we will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

A.    *Request for Protective Order*

In February 2022, Catherine Weiblen filed a request for DVRO against Bowie, alleging under penalty of perjury that in the course of an argument around Christmas 2021, Bowie pushed her, resulting in her slipping and falling; that during another argument on January 29, 2022, he yelled at her, threatened to pull a mounted TV onto her, and hit the door while continuing to yell at her, which made her fear for her safety; and that after the second incident Bowie harassed her by text and phone, and became angry and aggressive, which made her afraid physical violence would follow.

1

The court issued a temporary restraining order, and scheduled a hearing, which was continued to June 7, 2022. In advance of the hearing, Bowie filed a response in which he stated under penalty of perjury that he had not abused Weiblen and there had never been any domestic violence between them.

B.    *June 7, 2022 Evidentiary Hearing*

Weiblen represented herself at the hearing; Bowie was represented by counsel at the hearing, but represents himself on appeal. Weiblen offered her own testimony as well as testimony from her mother and the parties' roommate. Bowie was his only witness.

1.    *Weiblen's Testimony*

In response to questions from the court, Weiblen stated that she did not wish to add anything to her request at that time, and that she was still seeking a protective order.

On cross-examination by Bowie's counsel, Weiblen testified that she and Bowie had dated for 13 years, but were no longer together, having ended their relationship on January 29, 2022. At the time of the December 2021 and January 2022 incidents described in her request for order, she and Bowie shared a home. She testified that around Christmas in December 2021, she "slipped and fell when [Bowie] pushed me" in the chest. She suffered "just a bruise." She and Bowie had been arguing, but she could not recall what they were arguing about; "possibly" it was about money. Bowie was not working and received social security; she had a full-time job. She testified that she and Bowie were "in each other's personal space," and that she had "pushed him." Their roommate came in after Weiblen fell and tried to break up the argument, which was still going on. Weiblen admitted to pushing Bowie a

2

year or two before Christmas 2021, and 13 years ago at the "very beginning" of their relationship.

Weiblen further testified that from December 2021 into January 2022 she and Bowie "argued about several things," including a car accident he had and a related insurance issue. She testified that "[t]he pressure was getting angrier and was getting more often," and that on January 29 they were "arguing pretty heavily," and Bowie started arguing with their roommate, and "showed violence by punching a hole in the bedroom door."

After the cross-examination, the court asked Weiblen whether she had anything to add. Weiblen testified, "I still kind of fear [Bowie] being around," stating that Bowie was not "very physical with me, but it was just his actions towards me, his anger, his unpredictability toward the end."

2. *Roommate's Testimony*

The parties' roommate testified that around Christmas 2021 "there was a lot of yelling and arguing" between Weiblen and Bowie, "and I heard it get physical so I tried to get to them and stop them." She testified that she came out of her room, and saw Weiblen on the kitchen floor.

She testified that on January 29, 2022, Bowie and Weiblen were arguing and Bowie came into her room "in a very irate manner and started yelling at me." Bowie and Weiblen were still yelling at each other between the roommate's room and Weiblen's, and at some point Weiblen "yelled something that got him to leave me alone for a second, and he went into her room and he threatened to pull the TV off the wall on top of her." He then came back to the roommate's room, and "got in my face." She testified that although Bowie did not hit her she "felt the threat of being hurt" so she fled the house.

3

She testified that she never saw Bowie and Weiblen hit each other, but they often argued. She had heard Bowie "arguing about the fact he felt he shouldn't have to pay anything to live there," and that "he didn't want any bills in his name."

### 3. *Weiblen's Mother's Testimony*

Weiblen's mother testified that in February 2022, she received a text from Weiblen stating that Bowie was at the house and would not leave her alone. Weiblen's mother told Weiblen to come to her house, but then, when she heard nothing further from Weiblen, she called Weiblen and got no answer. She testified that she was worried, and went to Weiblen's house, where she heard Bowie yelling. She banged on the door; Bowie let her in; and Weiblen was crying.

### 4. *Bowie's Testimony*

Bowie testified that there was never any domestic violence in his relationship with Weiblen and that he never "laid a finger" on her. Asked about the events of December 2021, he testified "There was no incident that day," and they were not arguing.

He also testified that on Christmas 2021 he pushed Weiblen out of the way to stop her from running into him because she "ran in my face and [was] screaming at me" after he asked her for the bills that were in his name.

He testified that from December 2021 to January 2022, he and Weiblen had arguments, but he never threatened to harm her. He testified that over the course of their relationship, Weiblen had hit him "maybe three, four times," and that he never argued with Weiblen about anything other than the car accident, which occurred in November 2020. After the accident, he found out that there was no insurance on his car, even though Weiblen had told him there was insurance. He asked Weiblen for the policy, and she never gave it

4

to him. He also testified that he was upset because he was not receiving information about bills that he was supposedly paying.

He testified that on the day Weiblen's mother arrived at the house, he was asking Weiblen "for all the bills that are in my name, I am paying for."

5. *Trial Court Ruling*

At the close of testimony, the court heard argument from Bowie's counsel. Then the court stated that, "having heard the testimony today, [and] having read the paperwork," it found "sufficient basis to grant a Restraining Order After Hearing."

The court issued a restraining order against Bowie to remain in effect for three years, and Bowie timely appealed. Weiblen has not filed a respondent's brief, and oral argument has been waived. Therefore, we decide the appeal on the record and Bowie's opening brief. (Cal. Rules of Court, rule 8.220(a)(2).)

**DISCUSSION**

A. *Applicable Law*

The DVPA was enacted "to prevent acts of domestic violence, abuse, and sexual abuse." (Fam. Code, § 6220.)[1] The DVPA authorizes the trial court to issue an order "to restrain any person for the purpose specified in Section 6220 if [evidence] shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300, subd. (a).) "Abuse" is defined to include "any behavior that has been or could be enjoined pursuant to section 6320" (§ 6203, subd. (a)(4)), and "is not limited to the actual infliction of physical injury or assault." (§ 6203, subd. (b).) Section 6320 authorizes the court to issue an order enjoining several types of conduct including "striking," "threatening," and "disturbing the peace of the other party." (§ 6320, subd.

---

[1] Subsequent statutory references are to the Family Code.

5

(a).) " '[D]isturbing the peace of the other party' refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party." (§ 6320, subd. (c).) The "conduct may be committed directly or indirectly, including . . . by . . . telephone [or] text messages." (*Ibid.*)

"We review an order granting a protective order under the DVPA for abuse of discretion. ([*In re Marriage of*] *Nadkarni* [(2009)] 173 Cal.App.4th [1483,] 1495.) In considering the evidence supporting such an order, 'the reviewing court must apply the "substantial evidence standard of review," meaning " 'whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted,' supporting the trial court's finding. [Citation.] 'We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . ., resolving every conflict in favor of the judgment.' " ' [Citation.]' (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143.)" (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1424.)

B.     *Evidence to Support the Trial Court Order*

Bowie argues on appeal that the trial court's order is not supported by substantial evidence, contending that the trial court erred by treating a "common argument" as domestic violence; by ignoring evidence of abuse perpetrated by Weiblen and evidence that would support denying the request for order; and by disregarding purported inconsistencies between the allegations in Weiblen's request for order and testimony offered at the hearing. The arguments lack merit.

A trial court is authorized to "issue a DVRO to prevent domestic violence based upon reasonable proof of a past act or acts of abuse." (*In re Marriage of Davila and Mejia* (2018) 29 Cal.App.5th 220, 228.) The record here includes evidence that in the course of one argument, which started over

6

"something small," Bowie yelled and screamed at Weiblen and called her names; that they "were both in each other's personal space"; that she pushed him; and that he pushed her so that she slipped and fell and suffered a bruise. There was evidence that during a subsequent argument, Bowie threatened to pull a mounted TV onto Weiblen, which made her fear for her safety, and that he punched a hole in a door. There was evidence that Bowie kept texting and calling Weiblen; that she regarded his conduct as harassing; and that his "angry and aggressive" behavior made her afraid that he would be physically violent. There was evidence that Bowie's anger and unpredictability made Weiblen afraid to be around him. All of this constitutes substantial evidence that Bowie had abused Weiblen by threatening her and disturbing her peace. (§§ 6203, subds. (a)(4), (b); 6300, subd. (a); 6320, subds. (a), (c).) Accordingly, the trial court was authorized to issue a DVRO against Bowie.

It is irrelevant that there may be evidence in the record that would support a denial of Weiblen's request for order. The issue before us is not whether there is evidence to support a different finding from the one the court made, but only whether there is some evidence in the record which, if believed, would support the court's finding. (*Verrazono v. Gehl Company* (2020) 50 Cal.App.5th 636, 652.) Bowie fails to show that the trial court abused its discretion in issuing the DVRO.

C.    *Purported Bias*

Bowie argues for the first time on appeal that the trial court exhibited bias toward him and his counsel, and that he was denied his constitutional due process right to an impartial judge and a fair hearing. He contends that the trial court committed misconduct by "persistently [making] discourteous and disparaging remarks to defense counsel," by improperly overruling his

7

counsel's objections, by failing to entertain a legitimate objection, and by taking inconsistent positions with respect to the need for offers of proof.

Bowie failed to raise any claims of bias or misconduct below, as he acknowledges. "Only claims of 'pervasive judicial bias' are preserved in the absence of an objection, on the ground that objection in that instance may be futile." (*People v. Armstrong* (2019) 6 Cal.5th 735, 799.) We have reviewed the 46-page Reporter's Transcript, and find no evidence of bias, much less pervasive bias.

Bowie cites no specific example of a discourteous or disparaging remark made by the trial court to his attorney, and we have found none. As for objections to evidence, even if we assume that all the objections made by Bowie's counsel were well-taken, erroneous rulings by a trial court do not in themselves constitute the appearance of bias. (*Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 59.) We see no indication that the court's adverse legal rulings on the objections made by Bowie's counsel reflect personal bias or a failure by the trial court to apply the rules of evidence. " '[W]e presume . . . that the court . . . is able to distinguish admissible from inadmissible evidence, relevant from irrelevant facts, and to recognize those facts which properly may be considered in the judicial decisionmaking process.' " (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1526.) "These presumptions are based on the difference between lay jurors and judges: ' "The juror does not possess that trained and disciplined mind which enables him . . . to discriminate between that which he is permitted to consider and that which he is not. Because of this lack of training, he is unable to draw conclusions entirely uninfluenced by the irrelevant prejudicial matters within

8

his knowledge." ' "[2] (*Ibid.*) The fact that the trial court here may have heard inadmissible evidence "is not sufficient to overcome these presumptions." (*Ibid.*) Bowie does not argue that the trial court relied on any improper evidence or testimony in reaching its decision, and we see nothing in the record to suggest that the trial court did so.

Nor does anything in the transcript suggest that the trial court failed to rule on any objection. In the part of the transcript that Bowie cites to support his contention, the court responded to a hearsay objection by stating, "Your continuing objection is understood." By this, the trial court was overruling the objection, while recognizing counsel's right to make the objection and preserving the objections for appeal.

And we are not persuaded that the trial court demonstrated any inconsistency or bias with respect to requiring offers of proof. When Weiblen sought to introduce testimony from her mother, Bowie's counsel asked for an offer of proof, stating, "I never heard of this person." The court agreed, and Weiblen provided a brief explanation, which apparently did not entirely satisfy the court, because the court then asked Weiblen a further question. The answer to that question established relevance to the court's satisfaction, and the testimony was permitted. Later in the hearing, after Bowie's counsel had elicited extensive testimony from Bowie about financial issues between Bowie and Weiblen, the court eventually interrupted, stating "This is about domestic violence, this is not about a civil claim, so I am having a hard time seeing the relevance." After a brief colloquy, Bowie's counsel said he would link the testimony to an argument that occurred, and the court allowed the

---

[2] The trial court alluded to this distinction between juror and judge when it told Bowie's counsel that although it understood the concerns underlying his objections, "[t]his is not a jury trial, this is a trial before the Court."

9

examination to continue.  Nothing about either exchange suggests bias on the part of the trial court.

## DISPOSITION

The June 7, 2022 restraining order is affirmed.

                                        _____

                                        Miller, J.

WE CONCUR:

_____
Richman, Acting P.J.

_____
Mayfield, J.*

A165577, *Weiblen v. Bowie*

---

    * Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11