Filed 10/14/15  Jameson v. Desta CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BARRY S. JAMESON, | D066793 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. GIS9465) |
| TADDESE DESTA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.

Barry S. Jameson, in pro. per., for Plaintiff and Appellant.

La Follette, Johnson, De Haas, Fessler, & Ames, James J. Wallace II, Russell M. Mortyn, and David J. Ozeran for Defendant and Respondent.

I.

INTRODUCTION

In 2002, Barry S. Jameson filed a complaint against Dr. Taddesse Desta asserting numerous claims stemming from Desta's allegedly negligent medical treatment of

Jameson's hepatitis while Jameson was incarcerated at the Richard J. Donovan Correctional Facility (Donovan). In three separate prior appeals, this court reversed judgments in favor of Desta, and remanded the matter for further proceedings. (See *Jameson v. Desta* (2013) 215 Cal.App.4th 1144 (*Jameson III*), *Jameson v. Desta* (2009) 179 Cal.App.4th 672 (*Jameson II*), and *Jameson v. Desta* (July 2, 2007, D047824) opn. mod. July 26, 2007 [nonpub. opn.] (*Jameson I*).)

On remand from *Jameson III*, Jameson filed a motion for summary judgment and/or adjudication. The trial court denied the motion in its entirety and set the matter for trial. After the parties provided opening statements at an unreported jury trial, Desta orally moved for nonsuit. The trial court granted the motion and entered judgment in favor of Desta.

On appeal, Jameson contends that the trial court erred in denying his motion for summary judgment, and in granting Desta's motion for nonsuit. Jameson also claims that the trial court erred in failing to have the trial proceedings recorded by a court reporter. Jameson further claims that the trial court displayed bias and prejudice throughout the proceedings and that the court's rulings denied him a fair trial. Finally, Jameson maintains that the trial court's cumulative errors resulted in a denial of due process.

We conclude that the trial court properly denied Jameson's motion for summary judgment and/or adjudication because Jameson did not establish that he is entitled to judgment as a matter of law on any of his claims. We also conclude that the trial court did not err in failing to have the trial proceedings recorded by a court reporter. In

2

addition, we conclude that Jameson cannot demonstrate that the trial court erred in granting Desta's motion for nonsuit, because the record on appeal does not contain a reporter's transcript. Finally, we reject Jameson's contentions that the trial court displayed bias or prejudice throughout the proceedings and that the cumulative error doctrine requires reversal. Accordingly, we affirm the judgment.[1]

This court is fully aware that Jameson's incarceration and his financial circumstances have made it difficult for him to pursue his claims in court.[2] This case aptly demonstrates that civil justice is not free. While this court is sympathetic to the plight of litigants like Jameson whose incarceration and/or financial circumstances present such challenges, the rules of appellate procedure and substantive law mandate that we affirm the judgment in this case.[3]

---

[1] Approximately one week prior to the commencement of the jury trial, Desta filed a motion to dismiss on the ground that Jameson had failed to bring the matter to trial within five years, as required under Code of Civil Procedure section 583.310. The court took the issue under submission. After the parties presented opening statements, the court granted both the motion for nonsuit and the motion to dismiss. In light of our affirmance of the judgment on the ground that Jameson has failed to demonstrate that the court erred in granting the motion for nonsuit, we need not address whether the trial court properly granted Desta's motion to dismiss.

[2] Expert witness fees and court reporter fees are among the expenses that Jameson asserts he was unable to bear due to his indigence.

[3] Jameson also contends that in the event the matter is remanded, evidence of his prior felony conviction should be excluded at trial, certain motions in limine should be reconsidered or denied, and a change of venue granted. In light of our affirmance of the judgment, we need not consider these contentions.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *The operative allegations in Jameson's complaint*[4]

In April 2002, Jameson filed a complaint alleging eight causes of action, including

breach of fiduciary duty (lack of informed consent); professional negligence; general

negligence; failure to train; battery; violation of civil rights; intentional infliction of

emotional distress; and violation of due process against a number of defendants including

Desta and officials of the California Department of Corrections and Rehabilitation

(Department).[5]  Jameson's claims of breach of fiduciary duty and professional negligence

against Desta are the sole remaining causes of action and the only claims at issue in this

appeal.

In his complaint, Jameson alleged that he had been suffering from hepatitis and

that Desta negligently prescribed interferon for Jameson while Jameson was incarcerated

at Donovan and Desta was performing services as a physician for the Department.

Jameson further alleged that the interferon caused him to suffer serious physical injuries,

including irreversible damage to his eyesight.  With respect to his breach of fiduciary

duty claim, Jameson alleged in part:

> "Desta breached his fiduciary duty as a doctor when he started [Jameson] on Alpha-2B
> Interferon, when [Jameson] had no detectable viral count.  [The Department's] written

---

[4]      Our description of this portion of the factual and procedural background is drawn
from our opinion in *Jameson III*.

[5]      Desta is the only respondent in this appeal.

4

policy . . . clearly states if a person has a viral count that does not exceed 3,499, a person is not to be given interferon treatment. Moreover, such treatment is to be reviewed every six (6) months to review whether such treatment should be continued. . . . Desta simply continued [Jameson] on treatment [Jameson] should never have been on with deliberate indifference and a reckless disregard for the rights[,] health and safety of [Jameson], causing irreparable injury. . . . This second six months aggravated the injuries to [Jameson] unnecessarily.

"Desta held a position of trust with [Jameson], causing [Jameson] to rely on Desta's statements and recommendation that [Jameson] begin treatment and stay on it. It is only through [Jameson's] research of his own medical file and hepatitis literature that even as a layman he easily discovered the mistaken or malicious prescription by Desta that resulted in such damage." (*Jameson III*, *supra*, 215 Cal.App.4th at pp. 1150-1151.)

On his professional negligence cause of action, Jameson alleged that Desta had been "professionally negligent in his treatment of [Jameson], and there existed a physician-patient relationship." (*Jameson III*, *supra*, 215 Cal.App.4th at p. 1151.) Jameson also alleged the following:

"Due to Desta's professional negligence and failure to exercise the proper degree of knowledge and skill in diagnosing, treating and monitoring any such treatment, [Jameson] suffered and suffers extreme migraine headaches, vision loss, weight loss, depression and severe emotional duress. [Jameson] suffered such due to Desta ordering that [Jameson] take interferon treatment that [Jameson] did not need and local regulations precluded or excluded [Jameson] from taking. [Jameson] and Desta shared a position of trust, and Desta acted in the capacity of a 'specialist' in the field of [h]epatology.

"[Jameson's] liver condition never showed what is called a 'viral count,' and at all times relevant to this matter, [Jameson's] viral count was undetectable. Therefore, [Jameson] should have never been subjected to what amounted to cancer treatment and all the suffering that is attached thereto." (*Id.* at p. 1151.)

B.    *Proceedings on remand from* Jameson III

In November 2013, on remand from *Jameson III* in which this court reversed the trial court's granting of summary judgment in favor of Desta, Jameson filed a motion for summary judgment and/or adjudication on the two remaining claims in the action, breach of fiduciary duty and professional negligence. The trial court denied the motion in its

5

entirety. In its order denying the motion, the court indicated that there were numerous triable issues of fact and that "this case should proceed to trial."

In April 2014, the trial court commenced a jury trial. After the parties presented opening statements at the unreported jury trial, Desta orally moved for nonsuit. The trial court granted the motion for nonsuit and entered judgment in favor of Desta. Jameson timely appeals.

## III.

## DISCUSSION

A.    *The trial court properly denied Jameson's motion for summary judgment and/or summary adjudication*

Jameson claims that the trial court erred in denying his motion for summary judgment and/or adjudication.

6

1.      *Governing law*

" 'A motion for summary judgment shall be granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [Citation.] . . . A summary adjudication is properly granted only if a motion therefor completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty. [Citation.] Motions for summary adjudication proceed in all procedural respects as a motion for summary judgment.' " (*Jameson III*, *supra*, 215 Cal.App.4th at p. 1163.)

On appeal, the reviewing court makes " 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' " (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143, quoting *Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222–223.)

2.      *Factual and procedural background*

As noted above, in November 2013, Jameson filed a motion for summary judgment and/or adjudication. In his brief in support of the motion, Jameson contended that undisputed evidence demonstrated that Desta treated Jameson for hepatitis after Jameson was already cured, that Desta was professionally negligent and breached his fiduciary duty to Jameson in the manner by which he treated Jameson, and that Desta caused Jameson to suffer damages. Jameson claimed that he was therefore entitled to

7

judgment as a matter of law on his breach of fiduciary duty and professional negligence causes of action.

In the alternative, Jameson requested that the trial court grant summary adjudication with respect to several "issues," including whether Desta failed to inform Jameson of treatment options, whether Desta breached his fiduciary duty to Jameson, whether Desta had been professionally negligent, and whether newly discovered evidence and "law of the case" demonstrated that Desta caused Jameson to suffer damages.[6]

Desta filed an opposition in which he contended that the trial court should deny the motion for summary judgment and/or adjudication for several reasons, including that there were numerous issues of material fact.

After further briefing, the trial court denied Jameson's motion in its entirety. Among the numerous grounds upon which the court denied the motion was the following:

> "As to the request for summary judgment, the Court first notes that [Jameson] has not established with evidence damages and thus summary judgment would not be proper in any event. As to the 'issues' identified for adjudication, the Court further notes that [Jameson] is seeking adjudication of 'issues' and not 'causes of action' as required under

---

[6] Jameson phrased the issues as follows: "[T]here is no admissible evidence to defend plaintiff Jameson's claim defendant Desta failed to inform of treatment options"; "there is no admissible evidence nor defense against plaintiff's claim defendant Desta violated his fiduciary duty by subjecting plaintiff Jameson to six unnecessary months of interferon injections"; "there is no admissible evidence nor defense against plaintiff Jameson's claim that defendant Desta was professionally negligent when he subjected Jameson to six unnecessary months of interferon injections"; and "the documentary evidence Jameson obtained after the recent dismissal in the superior court . . . and the law of the case doctrine clearly show defendant Desta caused and contributed to plaintiff Jameson's damages."

8

[Code of Civil Procedure section] 437c, [subdivision] (f).  Summary adjudication must completely dispose of a cause of action or defense."

3.      *Application*

We begin our analysis by examining the allegations in Jameson's complaint.  (See *Sherman v. Hennessy Industries, Inc.* (2015) 237 Cal.App.4th 1133, 1138 [first step in an appellate court's review of a summary judgment is "identifying the issues framed by the complaint"].)  In his breach of fiduciary duty claim, Jameson alleged that Desta's actions caused "pain, suffering, emotional distress, and impairment of enjoyment of life to [Jameson]."  Similarly, in his professional negligence cause of action Jameson contended that Desta caused him "pain, suffering, and emotional distress for no medical reason."  Damages are an essential element of both breach of fiduciary duty and professional negligence.  (See *Jameson III, supra*, 215 Cal.App.4th at pp. 1164, 1166 [outlining elements].)  Thus, in order to be entitled to summary adjudication of either cause of action, Jameson was required to establish *as a matter of law* the *amount* of damages to which he was entitled.  (*Paramount Petroleum Corp. v. Superior Court* (2014) 227 Cal.App.4th 226, 243 ["summary judgment or adjudication improper where *amount* of damages raises factual issue" (italics added)].)

Jameson did not attempt to establish the *amount* of damages to which he was entitled with respect to either his breach of fiduciary duty or professional negligence

9

causes of action in his motion for summary judgment and/or adjudication.[7] Jameson

therefore failed to establish, as a matter of law, this element of his claims, as would be

required in order for the trial court to grant him summary adjudication on either cause of

action. (See *Paramount Petroleum Corp. v. Superior Court*, *supra*, 227 Cal.App.4th at p.

243.) Thus, Jameson was not entitled to summary judgment or summary adjudication

with respect to either his breach of fiduciary duty cause of action or his professional

negligence cause of action. In addition, to the extent the "issues" as to which Jameson

sought adjudication were distinct from these two causes of action, Jameson was not

entitled to summary adjudication with respect to such issues because these issues would

not " 'completely dispose[] of a cause of action, an affirmative defense, a claim for

damages, or an issue of duty.' " (*Jameson III*, *supra*, 215 Cal.App.4th at p. 1163.)

Jameson contends that the trial court should have granted his motion for summary

judgment and/or adjudication because Desta failed to file proper responsive opposition

papers to the motion. This argument is unpersuasive because Jameson did not carry his

---

7     As noted in the text, with respect to both his breach of fiduciary duty and
professional negligence causes of action, Jameson sought noneconomic damages for pain
and suffering. In light of the nature of these damages, it is highly doubtful that *any*
plaintiff could establish *as a matter of law* the amount of noneconomic damages to which
he or she was entitled. "The amount of noneconomic damages to award for pain and
suffering is a subjective determination that is particularly *within the discretion of the
jury*." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1416, italics added; see also
*Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d at 889, 893 [noneconomic
damages "represent[] a detriment which can be translated into monetary loss only with
great difficulty," and "*the issue generally must be resolved by the 'impartial conscience
and judgment of jurors* who may be expected to act reasonably, intelligently and in
harmony with the evidence' " (italics added)].)

initial burden of demonstrating that he was entitled to summary judgment or summary adjudication. Any deficiencies in Desta's opposition papers were therefore immaterial. (See, e.g., *Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1086 [trial court may not grant *unopposed* motion for summary judgment "without first determining that the moving party has met its initial burden of proof"].)

Accordingly, we conclude that the trial court properly denied Jameson's motion for summary judgment and/or summary adjudication.

B.     *The trial court did not err in failing to have the trial proceedings recorded by a court reporter*

Jameson contends that the trial court erred in failing to have the trial proceedings recorded by a court reporter.

1.     *Factual and procedural background*

At a hearing 10 days prior to the commencement of the jury trial, the trial court informed the parties that "the Court no longer provides a court reporter for civil trials, and that parties have to provide their own reporters for trial."[8]

The jury trial was not reported and there is no indication in the record that either party sought to provide a court reporter for the trial.

2.     *Governing law*

Government Code section 68086 provides in relevant part:

"The following provisions apply in superior court:

"(a) In addition to any other fee required in civil actions or cases:

_____

[8]     We quote from the minute order for the hearing.

11

(1) For each proceeding anticipated to last one hour or less, a fee of thirty dollars ($30) shall be charged for the reasonable cost of the court reporting services provided at the expense of the court by an official court reporter pursuant to Section 269 of the Code of Civil Procedure.

"[¶] . . . [¶]

(2) For each proceeding lasting more than one hour, a fee equal to the actual cost of providing that service shall be charged per one-half day of services to the parties, on a pro rata basis, for the services of an official court reporter on the first and each succeeding judicial day those services are provided pursuant to Section 269 of the Code of Civil Procedure.

"[¶] . . . [¶]

"(b) The fee shall be waived for a person who has been granted a fee waiver under Section 68631.

"(c) The costs for the services of the official court reporter shall be recoverable as taxable costs by the prevailing party as otherwise provided by law.

"(d) The Judicial Council shall adopt rules to ensure all of the following:

"(1) *That parties are given adequate and timely notice of the availability of an official court reporter.*

"(2) *That if an official court reporter is not available, a party may arrange for the presence of a certified shorthand reporter to serve as an official pro tempore reporter,* the costs therefor recoverable as provided in subdivision (c).

"(3) *That if the services of an official pro tempore reporter are utilized pursuant to paragraph (2), no other charge shall be made to the parties.*" (Italics added.)

California Rules of Court, rule 2.956, contains provisions governing notice concerning the availability of official court reporters.[9] Rule 2.956 provides in relevant part:

---

[9] All subsequent rules references are to the California Rules of Court.

Rule 2.956 provides in relevant part:

"(b) Notice of availability; parties' request

"(1) *Local policy to be adopted and posted*[:] Each trial court must adopt and post in the clerk's office a local policy enumerating the departments in which the services of official court reporters are normally available, and the departments in which the services of

12

"(c) Party may procure reporter[:] *If the services of an official court reporter are not available for a hearing or trial in a civil case, a party may arrange for the presence of a certified shorthand reporter to serve as an official pro tempore reporter. It is that party's responsibility to pay the reporter's fee for attendance at the proceedings, but the expense may be recoverable as part of the costs, as provided by law*." (Italics added.)

3.     *Application*

Government Code section 68086 and rule 2.956 clearly indicate that an official court reporter may not be available for a case. The statute and the rule further provide that, to the extent an official court reporter is unavailable, a party may arrange for the presence of a court reporter and that the costs of paying such reporter may potentially be recoverable by the prevailing party.

In this case, the record indicates that the trial court informed the parties of the unavailability of an official court reporter 10 days prior to the commencement of the jury trial. Further, there is nothing in the record indicating that Jameson attempted to "arrange

official court reporters are not normally available during regular court hours. If the services of official court reporters are normally available in a department only for certain types of matters, those matters must be identified in the policy.

"(2) *Publication of policy*[:] The court must publish its policy in a newspaper if one is published in the county. Instead of publishing the policy, the court may:

"(A) Send each party a copy of the policy at least 10 days before any hearing is held in a case; or

"(B) Adopt the policy as a local rule.

"(3) *Requests for official court reporter for civil trials and notices to parties*[:] Unless the court's policy states that all courtrooms normally have the services of official court reporters available for civil trials, the court must require that each party file a statement before the trial date indicating whether the party requests the presence of an official court reporter. If a party requests the presence of an official court reporter and it appears that none will be available, the clerk must notify the party of that fact as soon as possible before the trial. If the services of official court reporters are normally available in all courtrooms, the clerk must notify the parties to a civil trial as soon as possible if it appears that those services will not be available."

13

for the presence of a certified shorthand reporter to serve as an official pro tempore reporter." (Gov. Code, § 68086; rule 2.956.) Therefore, the trial court did not err in failing to have the proceedings transcribed by a court reporter.

Jameson appears to suggest that the trial court failed to inform him in a timely manner of the unavailability of a court reporter. We reject this argument because Jameson presents no argument that the trial court failed to comply with rule 2.956 governing notice of the unavailability of an official court reporter.[10] Further, the record indicates that the court informed Jameson of this fact 10 days prior to the commencement of the jury trial and Jameson presents no argument this was an insufficient amount of notice.

Jameson also appears to suggest that the trial court erred in failing to provide a court reporter because he had obtained a fee waiver pursuant to Government Code section 68631. Government Code section 68086, subdivision (b) provides that the official court reporter fee will be waived for a person who has been granted a fee waiver pursuant to Government Code section 68631. The statute does not mandate that a trial

---

[10] Specifically, Jameson does not claim that the trial court erred in failing to "require that each party file a statement before the trial date indicating whether the party requests the presence of an official court reporter." (Rule 2.956(b).) Further, Jameson does not contend that the court's provision of 10 days' notice concerning the unavailability of an official court reporter failed to comply with the requirement that the " the clerk . . . notify the party of [the unavailability of an official court reporter] as soon as possible before the trial." (*Ibid*.)

court provide indigent litigants with court reporter services where no official court reporter is provided by the court, as was true in this case.

Further, rule 2.956 states that it is a "party's responsibility to pay the reporter's fee" where an official court reporter is not provided by the court. In addition, San Diego Superior Court policy provides that "Official court reporters are *not* normally available in civil . . . matters" (italics added), and states that, "[p]arties, *including those with fee waivers*, are responsible for all fees and costs related to court reporter services" where an official court reporter is not provided by the court. (Italics added.) (See <http://www.sdcourt.ca.gov/portal/pageid=55,1839949&_dad=portal&_schema= PORTAL> [as of Oct. 2, 2015].)[11] Thus, Jameson's fee waiver did not mandate that the trial court provide him with the services of a court reporter free of charge. Accordingly, we conclude that the trial court did not err in failing to have the trial proceedings recorded by a court reporter.

C.     *Jameson has failed to demonstrate that the trial court erred in granting Desta's motion for nonsuit*

Jameson contends that the trial court erred in granting Desta's motion for nonsuit.

1.     *Factual and procedural background*

---

[11]     The Superior Court of San Diego County, Local Rule 5.1.8 provides that "The court's policy regarding the availability and unavailability of official court reporters can be read in full on the court's [Web] site."

According to a minute order in the respondent's appendix, after the parties presented opening statements, Desta made a motion for nonsuit. The minute order indicates that the trial court granted the motion, as follows:

> "The court . . . GRANTS the non-suit . . . . Mr. Jameson did not establish causation in his opening statement. The court allowed all of [Jameson's] exhibits into evidence as requested. The court finds that Mr. Jameson did not have an expert available. [¶] The Court finds that it's clear that the plaintiff cannot establish [a] causal connection between [the] treatment [of] Dr. Desta and alleged damages. [¶] The Court states that [Jameson] had not established [that] Dr. Cooper was unavailable and even in the deposition Dr. Cooper gave no opinion on causation or damages.[12] It is clear, that no matter how far the Court allowed [Jameson] to go in trial that he could not overcome these issues. The court GRANTS the non-suit on all causes of action. [¶] The Court finds that there is no basis upon which a jury could find for [Jameson]: [¶] . . . [¶] That [Jameson] has not presented any evidence that a jury could find for [Jameson] that Dr. Desta did not meet the standard of care and causal damage to [Jameson]; nor breached any fiduciary duty."

2.      *Governing law*

"A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor." (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.) A defendant

---

12      Jameson offered a declaration from Dr. Allen D. Cooper in support of his motion for summary judgment. Desta offered excerpts of Dr. Cooper's deposition in support of his motion for summary judgment. (See *Jameson III, supra*, 215 Cal.App.4th at pp. 1157-1160.) In *Jameson III*, this court stated that Dr. Cooper's deposition testimony concerning causation and damages was "ambiguous" and rejected Desta's contention that he was entitled to summary judgment on the ground that the excerpts from the deposition conclusively established that Dr. Cooper had no opinion as to causation and damages. (*Ibid*.) However, the *Jameson III* court *did not state* that Dr. Cooper's deposition in fact contained opinions as to causation and damages sufficient to establish Jameson's claims. (*Ibid*.)

16

may move for nonsuit after the plaintiff's opening statement or at the close of the plaintiff's evidence. (Code Civ. Proc., § 581c, subdivision (a).)[13]

An appellant who fails to provide a reporter's transcript on appeal is precluded "from raising any evidentiary issues on appeal." (*Hodges v. Mark* (1996) 49 Cal.App.4th 651, 657.) Because an order granting a nonsuit is dependent on a review of the evidence to be presented at trial, an appellant cannot obtain reversal of such order in the absence of a reporter's transcript. (*Ibid*. ["Since the reversal of a nonsuit requires the review of the evidence presented to the trial court, and a reporter's transcript was not provided, we do not reach the merits of [appellant's] claim"].)

3.    *Application*

As noted previously, the record on appeal does not contain a reporter's transcript. Jameson is therefore precluded from obtaining a reversal of the trial court's ruling granting Desta's motion for nonsuit. (See *Hodges v. Mark*, *supra*, 49 Cal.App.4th at p. 657.)

While Jameson raises several arguments in support of reversal of the nonsuit, including contentions concerning the availability of Dr. Cooper, whether the trial court erred in failing to take judicial notice of this court's prior opinions in this case, whether the trial court erred in excluding Dr. Cooper's declaration and deposition, whether the

_____

[13]    Code of Civil Procedure section 581c, subdivision (a) provides in relevant part: "Only after, and not before, the plaintiff has completed his or her opening statement, or after the presentation of his or her evidence in a trial by jury, the defendant . . . may move for a judgment of nonsuit."

17

trial court erred in precluding Jameson from relying on Desta's expert, whether the doctrine of res ipsa loquitor applies in this case, and whether the trial court improperly refused to consider jury instructions setting forth Jameson's theories of the case, none of these contentions is cognizable in the absence of a reporter's transcript.

Jameson also suggests that the trial court did not grant Desta's motion for nonsuit as to Jameson's "failure to inform claim." The minute order states that the trial court granted the motion as to "all causes of action." Thus, Jameson is not entitled to "proceed on the failure to inform claim."

Accordingly, we conclude that Jameson has failed to demonstrate that the trial court erred in granting Desta's motion for nonsuit.

D.    *The record does not indicate that the trial court displayed bias or prejudice throughout the proceedings*

Jameson contends that the trial judge displayed bias and prejudice throughout the proceedings, and that this resulted in his being denied a fair trial. Although it not entirely clear from his brief, Jameson appears to contend that the trial judge erred in denying Jameson's motion to disqualify the judge pursuant to Code of Civil Procedure section 170.1 and that the judge's rulings violated his due process right to an impartial judge.

1.    *Governing law*

a.    *Review of a trial court's ruling on a motion to disqualify is not cognizable on appeal*

Code of Civil Procedure section 170.3, subdivision (d) provides in relevant part:

18

"The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding."

In *People v. Panah* (2005) 35 Cal.4th 395 (*Panah*), the Supreme Court reiterated that Code of Civil Procedure section 170.3, subdivision (d) provides the exclusive method by which a party may seek appellate review of a judicial disqualification motion: "As we have repeatedly held, the statute means what it says: Code of Civil Procedure section 170.3, subdivision (d) provides the exclusive means for seeking review of a ruling on a challenge to a judge, whether the challenge is for cause or peremptory." (*Panah, supra*, at p. 444.)

2. *A party may claim on appeal that a trial judge violated the party's right to an impartial judge*

"[N]otwithstanding the exclusive-remedy provision of Code of Civil Procedure section 170.3, 'a [party] may assert on appeal a claim of denial of the due process right to an impartial judge.' " (*Panah, supra,* 35 Cal.4th at p. 445, fn. 16.) "The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." (*Marshall v. Jerrico, Inc.* (1980) 446 U.S. 238, 242.)

3. *Application*

Jameson appears to contend that the trial judge erred in denying his October 2013 motion to disqualify the trial judge pursuant to Code of Civil Procedure section 170.1. This claim is not cognizable on appeal. (*Panah, supra*, 35 Cal.4th at pp. 444-445.)

Jameson also appears to claim that the trial judge violated his due process right to an impartial judge by repeatedly ruling against Jameson with respect to various motions,

19

including a May 2013 motion for change of venue, an October 2013 motion for judgment on the pleadings, and the motion for summary judgment or adjudication addressed in part III.A., *ante*. "The mere fact that the trial court issued rulings adverse to [Jameson] on several matters in this case, even assuming one or more of those rulings were erroneous, does not indicate an appearance of bias, much less demonstrate actual bias. (See *Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 59–60 . . . ['While we conclude the court erred in several respects, the leap from erroneous rulings to the appearance of bias is one we decline to make.'].)" (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674.)

In any event, Jameson has not demonstrated that the trial court erred in denying any of the motions. With respect to the motion for a change of venue, a trial court has discretion in determining whether to grant such a motion (see, e.g., *Ford Motor Credit Co. v. Superior Court* (1996) 50 Cal.App.4th 306, 308), and there is nothing in either Jameson's brief or in the record demonstrating that the court abused its discretion in denying the motion.[14] The motion for judgment on the pleadings that Jameson references in his brief is clearly without merit because Jameson failed to demonstrate that Desta's answer did "not state facts sufficient to constitute a defense to the complaint," as would be required in order for Jameson to be entitled to judgment on the pleadings. (Code Civ. Proc., § 438, subd. (c)(1)(A).) Finally, the motion for summary judgment

[14] "An order granting or denying a motion to transfer venue is reviewable only by petition for writ of mandate." (*K.R.L. Partnership v. Superior Court* (2004) 120 Cal.App.4th 490, 496, fn. 6.)

20

and/or adjudication was also clearly without merit for the reasons stated in part III.A., *ante*.

We have carefully reviewed the record and conclude that it does not indicate that the trial court displayed bias or prejudice against Jameson. Accordingly, we reject Jameson's contention that the trial court violated his right to an impartial judge.

E.     *The cumulative error doctrine does not apply*

Jameson contends that the trial court's cumulative errors denied him due process and a fair trial. "Under the 'cumulative error' doctrine, errors that are individually harmless may nevertheless have a cumulative effect that is prejudicial." (*In re Avena* (1996) 12 Cal.4th 694, 772, fn. 32.) In light of our conclusion that Jameson has not demonstrated any individual errors, the cumulative error doctrine does not apply. (See, e.g., *Jiagbogu v. Mercedes-Benz USA* (2004) 118 Cal.App.4th 1235, 1246 ["Since there is no error in these individual rulings, there is, of course, no cumulative error"].)

IV.

DISPOSITION

The judgment is affirmed. Desta is entitled to recover costs on appeal.

                                                           AARON, J.

WE CONCUR:

NARES, Acting P. J.

McDONALD, J.