Filed 5/17/22  Doe v. White CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JOHN DOE,<br><br>　　　Plaintiff and Appellant,<br><br>　　v.<br><br>TIMOTHY P. WHITE, as Chancellor and Trustee, etc.,<br><br>　　　Defendant and Respondent. | B307444<br><br>(Los Angeles County Super. Ct. No. 19STCP02973) |

APPEAL from an order of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Affirmed.

Hathaway Parker, Mark M. Hathaway and Jenna E. Parker for Plaintiff and Appellant.

California State University Office of General Counsel, Susan Westover and William C. Hsu; O'Melveny & Myers, Apalla U. Chopra, Adam J. Karr, and Anton Metlitsky for Defendant and Respondent.

_____

Petitioner and appellant John Doe appeals from an order granting a motion to strike class certification allegations that was entered in favor of respondents Timothy P. White, in his capacity as Chancellor of the California State University, and the Board of Trustees of the California State University (collectively "the University") in this action concerning student discipline procedures in sexual misconduct complaints. On appeal, Doe contends common issues of law and fact predominate, his claims and defenses are typical of the class, and a class action is a superior method to individual litigation. We conclude the trial court properly struck the class action allegations in this case because individual issues predominate over common questions. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### University Policies

Between July 2015 and July 2019, the University's policies governing student complaints about sexual misconduct were contained in Executive Order 1097, as revised in June 2015 (2015 EO 1097) and in October 2016 (2016 EO 1097). Under both versions of the policy, after a complaint of sexual misconduct was filed, a Title IX coordinator conducted an initial intake interview with the complainant. The coordinator was required to explain the investigation procedure and inform the complainant of applicable rights, including the right to have an advisor present, and discuss interim remedies. The coordinator would inform the

2

complainant of the right to file a criminal complaint and offer to assist with filing a criminal complaint.

Prior to or during the initial interview with the accused, the coordinator was required to explain the procedure and the accused's rights, including the right to have an advisor present. The coordinator must also provide the accused with a copy of the University's policy and a description of the complainant's allegations. The coordinator must also provide the accused "a full opportunity to respond to the allegations, including scheduling other meeting(s), accepting documentary evidence, and accepting [the accused's] list of potential witnesses[.]" With limited exceptions, information about the complaint could be shared as necessary with other campus employees and law enforcement; confidentiality could not be ensured.

After reviewing the complaint and the information received during the intake interview, the coordinator would make a determination about whether the complaint fell within the scope of the policy. If it was within the policy, the coordinator would promptly investigate the complaint, or assign the investigation to another investigator. If assigned to another investigator, the coordinator was to monitor, supervise, and oversee all delegated tasks, including reviewing investigation reports before they were final. The policy provided that "The Complainant and [the accused] shall have equal opportunities to present relevant witnesses and evidence in connection with the investigation. . . . [¶] Before reaching a final conclusion or issuing a final investigation report, the Investigator shall have: a) advised the Parties, or have offered to do so, verbally or in writing, of any evidence upon which the findings will be based; and, b) given the Parties an opportunity to respond to the evidence, including

presenting further relevant evidence, information or arguments that could affect the outcome.  The Investigator will not reach a final conclusion or issue an investigation report until giving careful consideration to any such relevant evidence, information or arguments provided by the Parties.  The Investigator retains discretion and authority to determine relevance."

The policy expressly anticipated that a law enforcement agency could be conducting a criminal investigation into the same allegations, but stated that the procedures were separate investigations; the University must complete its investigation as promptly as possible, rather than wait for the police investigation to conclude.  The investigator was to prepare a report which included a summary of the allegations, the investigation process, the preponderance of the evidence standard, a detailed description of the evidence considered, and findings of fact.  The report must be promptly provided to the coordinator, if applicable, to review.

The coordinator would inform the complainant and accused of the outcome of the investigation in writing, including a summary of the allegations, the investigation process, the preponderance of the evidence standard, the evidence considered, the investigator's findings of fact, a determination as to whether the University's policy was violated, and if so, any remedies to be imposed.

A dissatisfied party could file an appeal with the Chancellor's Office on the ground that the outcome was not supported by the evidence under the preponderance standard, procedural errors prejudiced the outcome, or new evidence existed that was not available at the time of the investigation.

4

Executive Order 1098 (EO 1098), effective in June 2015, provided the University's student discipline procedures during the relevant time. The findings of the investigation, after the appeal process was exhausted, were final. If the appropriate sanction were not resolved through a conference with the accused student, a hearing would be held to determine the appropriate sanction. The sanctions that could be imposed for violation of the student conduct code were: restitution; loss of financial aid; educational or remedial sanctions, such as essays or service to the University; denial of access to the campus or specified people for a designated period of time; disciplinary probation; suspension; or expulsion.

**Proceeding Against Doe**

On November 15, 2016, University student Jane Roe filed a sexual misconduct complaint against fellow student Doe. Coordinator Mary Bacerra informed Doe that allegations of sexual misconduct had been made against him by Roe about an alleged incident that took place off campus on October 18, 2016. The charges were governed by 2016 EO 1097 and EO 1098.

The coordinator designated investigator Andy Terhorst to investigate the allegations and determine whether Doe violated University policy. Doe denied the allegations. There was no hearing before an "impartial factfinder." Terhorst concluded Roe's allegations were substantiated. Doe appealed the determination, but the manager of investigations for the chancellor's office denied the appeal, because he had not shown the determination was unsupported by the evidence under the preponderance standard, that procedural errors had an impact on

the outcome, or any new evidence unavailable at the time of the investigation.

A hearing officer recommended expulsion, which prevented admission to any Cal State University and cancelled enrollment for upcoming semesters.  The University expelled Doe on June 8, 2017.  Doe appealed, but the University denied his appeal on June 30, 2017.

## Petition for Writ of Mandate

On July 16, 2019, Doe filed a petition for writ of administrative mandate on behalf of himself and all persons similarly situated who were disciplined under the policies at issue.  The University filed a motion to strike the class allegations, which the trial court granted with leave to amend.

On February 14, 2020, Doe filed an amended petition for writ of administrative mandate.  Doe sought a writ of mandate directing the University to vacate the findings and sanctions against himself and all members of the class of persons similarly situated to set aside findings and sanctions imposed under policies that lacked fairness and due process.

The class was all California State University students found responsible for sexual misconduct under 2015 EO 1097, 2016 EO 1097, and/or EO 1098, from July 16, 2015 through July 16, 2019.  The members of the class were ascertainable from the University's internal records and required reports.  The persons in the class are so numerous that joinder is impracticable, and the disposition of their claims in a class action rather than individual actions will benefit the parties and the court.

A well-defined community of interest in the questions of law and fact predominated over the interests of individual class members. The policies, which have been rescinded, denied the students accused of sexual misconduct the right to a fair hearing, including access to all of the evidence prior to the adjudicator making a determination and a hearing with cross-examination of witnesses before a neutral, independent adjudicator.

The common questions of law and fact to be litigated include: (1) whether the policies at issue complied with the law; (2) whether the University failed to implement procedures that provide adequate due process to students accused of sexual misconduct at California State Universities; and (3) whether findings and discipline imposed under the policies must be set aside and vacated. These questions predominate over questions that affect individual class members.

Doe's claims were typical of the class, and he would fairly and adequately represent the class interest. He did not have any interests antagonistic to other class members, and the relief he sought would inure to the benefit of class members generally. The University was aware of the class of individuals who had been improperly disciplined since at least September 2018, but had taken no action to correct the deprivation of their rights.

**Proceedings to Strike Class Allegations from Amended Writ Petition**

On May 29, 2020, the University filed a motion to dismiss the amended writ petition or strike the class allegations. The University argued that Doe was an inadequate class representative, because he failed to assert claims that absent

7

class members would reasonably expect to be preserved. Each administrative proceeding was a highly individualized sexual assault proceeding. The class proceeding would necessarily and impermissibly waive numerous potentially superior grounds for recovery that could afford putative class members relief if the grounds raised in the petition fail, such as lack of jurisdiction or findings unsupported by evidence.

In addition, even under a facial challenge of the former policies, the trial court must examine in each case the evidentiary record, the sanction imposed, and the specific procedures utilized in order to determine whether a particular class member received a fair hearing.

A class action was not a superior method of resolving the dispute, because class members had an adequate incentive to bring independent actions for equitable relief given the gravity of the subject matter.

Also, Doe could not proceed anonymously and represent a class, because he owed a fiduciary duty to absent class members. The class members had a right to know who was directing their litigation. And Doe's individual claim was barred by the doctrine of laches. Waiting more than two years to file a petition for relief was unreasonable delay, because relevant witnesses had graduated and their recollection of events after the lengthy passage of time would have deteriorated. The University asked the court to dismiss the amended writ petition entirely, or strike the class allegations.

In support of the motion to strike, the University filed a request for judicial notice of several documents, including writ petitions filed against the University challenging administrative actions against other individuals based on the sexual misconduct

8

policies, and Roe's transcript showing she had graduated and was no longer a student of the University. The University argued the writ petitions in other cases illustrated the myriad allegations of error raised with respect to the unique circumstances of each disciplinary action. In addition, the University provided pleadings in a matter filed by Doe's attorney on behalf of a different petitioner against the Regents of the University of California seeking to bring a class action challenging sexual misconduct policies. The trial court in that case had sustained a demurrer to the class allegations, ultimately without leave to amend, on the grounds that the issues were not subject to common proof and individual questions would predominate.

In June 2020, Doe filed an opposition to the demurrer and motion to strike. He argued that the class representative was not required to allege the entire universe of claims that class members may bring, and he could adequately represent the interests of the class while using a pseudonym. Common issues predominated, individualized issues were manageable, and a class action was the superior means to resolve the cases. In addition, his claim was not barred by laches. In support of the opposition, Doe requested the court take judicial notice of Executive Order 1097, as revised on March 29, 2019, which superseded the investigation and resolution provisions of the prior policies as applied in sexual misconduct cases in which a severe sanction of suspension or expulsion could be imposed and the credibility of a party or witness was central to the determination. Doe also filed an objection to the University's request for judicial notice. The University filed a reply in support of the demurrer and motion to strike.

After a hearing on July 28, 2020, the trial court issued an order on August 4, 2020, granting the motion to strike without leave to amend. The court found Doe was an inadequate representative for the class, because he had not raised all of the claims that class members would reasonably expect to be asserted, such as the claim that the University lacked jurisdiction over their conduct. In addition, although the amended petition purported to allege a facial challenge to the policies, it was more accurately characterized as an as-applied challenge, because it did not seek prospective relief and required consideration of the application of the policies in particular individual circumstances. Doe had not identified any specific language in the policies that he asserted was facially unconstitutional. He had not alleged that the provisions inevitably conflicted with constitutional rights. Fair hearing requirements were flexible and did not require rigid procedures.

The court also found that there was no community of interest, because whether witness credibility was a central issue required an individual determination in every case. The court found that the need for individual inquiry would not be alleviated by creating sub-classes. A class action was not superior to individual litigation, because class members had an adequate incentive to bring independent actions. Because of the individualized inquiry required, a class proceeding would not streamline the process or reduce costs for the parties.

The court overruled the University's demurrer to the petition. The writ petition did not appear to be barred by any applicable statute of limitations. Under the doctrine of laches, Doe's 25-month delay in filing the writ petition was unreasonable, particularly because his current counsel had

represented him in the matter as early as June 2017, and ample legal authority had been issued providing timely guidance.  No prejudice to the University appeared, however, at this stage of the proceedings.  The court granted the parties' requests for judicial notice.  Doe filed a timely notice of appeal from the order.

## DISCUSSION

## Standard of Review

"A motion to strike, like a demurrer, challenges the legal sufficiency of the complaint's allegations, which are assumed to be true.  [Citation.]"  (*Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 53.)  We review the ruling on the motion to strike class allegations de novo.  (*Id.* at p. 54.)

## General Law Applicable to Student Discipline Proceedings

### A.  Review Available by Writ of Administrative Mandamus

A student may challenge a disciplinary sanction for sexual misconduct at a private or public university by way of a petition for writ of administrative mandate.  (*Doe v. Allee* (2019) 30 Cal.App.5th 1036, 1060 (*Allee*); *Doe v. Regents of University of California* (2021) 70 Cal.App.5th 521, 532–533 (*UCSB (1)*).)  The student seeking the writ of administrative mandate must show that the institution:  "(1) acted without, or in excess of, its jurisdiction, (2) deprived the petitioner of a fair administrative

hearing, or (3) committed a prejudicial abuse of discretion. ([Code Civ. Proc., ]§ 1094.5, subd. (b); *Doe v. University of Southern California* (2016) 246 Cal.App.4th 221, 239 (*USC [(1)]*) [§ 1094.5's 'fair trial' requirement means there must be a fair administrative hearing].) "'Abuse of discretion is established if the [agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.'" (*Ibid.*; see *Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1169.)" (*UCSB (1), supra,* 70 Cal.App.5th at p. 532, fn. omitted.)

When the administrative decision does not concern a fundamental vested right, the trial court reviews the administrative record to determine whether the agency's findings and decision are supported by substantial evidence. (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1057.) Where the procedural fairness of the administrative hearing is at issue, the trial court reviews the facts related to how the hearing was conducted and exercises its independent judgment on the basis of the administrative record. (See *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81 [administrative decision was set aside based on the trial court's review of administrative hearing procedures reflected in the administrative record]; *City of Fairfield v. Superior Court* (1975) 14 Cal.3d 768, 776.)

### B. Fair Process

"Generally, a fair process requires notice of the charges and an opportunity to be heard. [Citation.]" (*Doe v. Regents of University of California* (2021) 70 Cal.App.5th 494, 513 (*UC*

*Davis*).) The university must follow its own policies and procedures (*ibid*), and the accused student must have a full opportunity to present defenses (*Doe v. Regents of University of California* (2016) 5 Cal.App.5th 1055, 1104 (*UCSD*)).

"Beyond these standards, however, it is safe to say the law is in flux regarding what procedures are required for student disciplinary proceedings involving allegations of sexual misconduct at colleges and universities." (*UC Davis*, *supra*, 70 Cal.App.5th at p. 513.) "Fair hearing requirements are 'flexible' and entail no 'rigid procedure.' [Citations.]" (*Allee*, *supra*, 30 Cal.App.5th at p. 1062.) Disciplinary hearings "need not include all the safeguards and formalities of a criminal trial" and the university "'is not required to convert its classrooms into courtrooms.' [Citation.]" (*UCSD*, *supra*, 5 Cal.App.5th at p. 1078.) The formal rules of evidence are not required to be applied. (*Doe v. Regents of University of California* (2018) 28 Cal.App.5th 44, 56 (*UCSB (2)*).) "But the recent trend has been to expect more adversarial and criminal-trial-like procedures when a student is accused of sexual misconduct." (*UC Davis*, *supra*, 70 Cal.App.5th at p. 513.)

In *UCSD*, the university allowed an accused student to indirectly cross-examine the complainant by submitting written questions to the hearing panel before the hearing, which the panel asked the complainant. (*UCSD*, *supra*, 5 Cal.App.5th at p. 1084.) In November 2016, Division One of the Fourth District held that when "findings are likely to turn on the credibility of the complainant, and [the] respondent faces very severe consequences if he is found to have violated school rules, . . . a fair procedure requires a process by which the respondent may question, if even indirectly, the complainant." (*Ibid*.) The court

13

found the method of cross-examination employed by the institution in *UCSD* was fair as a procedural matter. (*Id.* at p. 1085.)

In August 2018, in *Doe v. Claremont McKenna College* (2018) 25 Cal.App.5th 1055, 1070, Division One of the Second District similarly held that "where the accused student faces a severe penalty and the school's determination turns on the complaining witness's credibility," "the complaining witness must be before the finder of fact either physically or through videoconference or like technology to enable the finder of fact to assess the complaining witness's credibility in responding to its own questions or those proposed by the accused student."

In January 2019, Division Four of the Second District imposed procedural requirements in *Allee, supra*, 30 Cal.Ap.5th 1036, after finding that "when a student accused of sexual misconduct faces severe disciplinary sanctions, and the credibility of witnesses (whether the accusing student, other witnesses, or both) is central to the adjudication of the allegation, fundamental fairness requires, at a minimum, that the university provide a mechanism by which the accused may cross–examine those witnesses, directly or indirectly, at a hearing in which the witnesses appear in person or by other means (e.g., videoconferencing) before a neutral adjudicator with the power independently to find facts and make credibility assessments. That fact finder cannot be a single individual with the divided and inconsistent roles [of investigator and fact finder]." (*Allee, supra,* 30 Cal.App.5th at p. 1069.)

## C. Effect of Education Code Section 66281.8

Doe alleged a class of California State University students that were found responsible for sexual misconduct under the policies at issue from July 16, 2015 through July 16, 2019.  Our resolution of the instant appeal does not require us to determine any question concerning Education Code section 66281.8.

The Legislature adopted section 66281.8 of the Education Code, effective January 1, 2021, providing requirements for sexual harassment grievance procedures.  (Senate Bill No. 493 (2019–2020 Reg. Sess.).)  For example, section 66281.8, subdivision (b)(4)(A)(viii), requires an institution to adopt grievance procedures that allow the institution to decide whether a hearing is necessary to determine whether any sexual violence occurred, including consideration of whether the parties elected to participate in the investigation and had the opportunity to suggest questions to be asked of the other party or witnesses during the investigation.  Cross-examination may not be conducted directly by a party or the party's advisor. (Ed. Code, § 66281.8, subd. (b)(4)(A)(l).)

In addition, subdivision (g) of section 66281.8 enigmatically provides, "(1) Any case law interpreting procedural requirements or process that is due to student complainants or respondents when adjudicating complaints of sexual or gender-based violence, including dating or domestic violence, at postsecondary educational institutions in the State of California shall have no retroactive effect.  [¶]  (2) Any case law that conflicts with the provisions of the act that adds this section shall be superseded as of this statute's effective date."

15

The California Supreme Court is considering the following questions in *Boermeester v. Carry*, review granted, September 16, 2020, S263180: (1) whether the common law right to fair procedure requires a private university to provide certain procedural processes, such as cross-examination at a live hearing; (2) whether the student subject to the disciplinary proceeding in that case waived or forfeited any right to cross-examine witnesses at a live hearing; 3) assuming it was error not to provide an opportunity to cross-examine witnesses, was the error harmless; and (4) the effect, if any, of Senate Bill No. 493 on the resolution of the issues presented.

We need not determine any question related to application of section 66281.8, subdivision(g), to resolve this appeal, because as discussed below, Doe failed to demonstrate that common questions predominate over individual issues.

## **Individual Issues Predominate**

Doe contends the motion to strike should have been denied because common issues of fact and law predominate over individual issues. We disagree.

To certify a class under Code of Civil Procedure section 382, "[t]he party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who

16

can adequately represent the class."' [Citation.]" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).)

"The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' [Citation.] A court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible. 'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' [Citations.]" (*Brinker, supra,* 53 Cal.4th at pp. 1021–1022, fn. omitted.)

"To assess predominance, a court 'must examine the issues framed by the pleadings and the law applicable to the causes of action alleged.' [Citation.] It must determine whether the elements necessary to establish liability are susceptible of common proof or, if not, whether there are ways to manage effectively proof of any elements that may require individualized evidence. [Citation.]" (*Brinker, supra,* 53 Cal.4th at p. 1024.)

Doe contends the common questions of law and fact to be litigated include: (1) whether the policies at issue complied with the law; (2) whether the University failed to implement

17

procedures that provide adequate due process to students accused of sexual misconduct at California State Universities; and (3) whether findings and discipline imposed under the policies must be set aside and vacated. The common law right to fair procedure applicable to the claims at issue provided students accused of sexual misconduct with a right to cross-examine the complainant and witnesses, directly or indirectly, if the accused faced severe disciplinary sanctions and the credibility of witnesses was central to the adjudication of the allegation.

The individual questions that would have to be determined in the proposed class action far outweigh common issues, making the claims unsuitable for a class action. The common issues identified by Doe in this case concerning whether the University's policies, in the abstract, failed to provide due process are relatively simple questions to determine: Doe sets forth a strong case that the policies at the time provided insufficient protection when evaluated against our current understanding of the law. But a ruling on these common issues alone would not establish that the University failed to provide any student with adequate due process and would not require the findings or discipline against any student to be set aside.

Rather, the trial court would need to address far more than the validity of the prior policies in the abstract. It would need to examine the unique facts of each individual case to determine whether the University's policies as applied denied the accused student a fair proceeding. For example, the trial court would need to determine the severity of the sanctions faced by each student to assess the procedures necessary for a fair hearing under the circumstances of that student's case. The court would need to review the administrative record of each proceeding to

18

determine the process that was actually provided to the accused student, such as whether the student received all of the evidence or was allowed any method of cross-examination.  Critically, the court would need to determine in each case whether the result meaningfully relied on the credibility of a witness or was established by other evidence, such as the accused student's own statements or written communications (e.g. text messages or emails).  We note as well that the court would have to make fact-specific determinations about the University's defenses in each matter, including laches and the statute of limitations.  The issue of laches, for example, requires the University to show prejudice within the unique circumstances of each proceeding.

Doe does not make any persuasive argument that these issues are not implicated or significant in determining whether due process was provided to any given member of the proposed class.  Doe instead suggests that the litigation could be managed through the creation of subclasses.  We disagree.  An examination of the unique facts of each proceeding, such as the import of credibility, would nevertheless be required on an individualized basis to create the subclasses.  The class action mechanism is not a suitable vehicle to resolve the claims in this case, because while common questions concerning the adequacy of the University's policies are relatively easily resolved at an abstract level, establishing the University's liability would further require a mini-trial as to each class member to resolve myriad individual questions.  The trial court properly struck the class allegations from the writ petition in this case.

19

## DISPOSITION

The order granting the motion to strike the class allegations is affirmed.  Respondents Timothy P. White, in his capacity as Chancellor of the California State University, and the Board of Trustees of the California State University are awarded their costs on appeal.

MOOR, J.

We concur:

RUBIN, P. J.

KIM, J.